**Karen Ann DELCOURT, Appellant,**

v.

**Dr. Edward SILVERMAN, Ph.D. and Norma Levine Trusch, Appellees.**

No. 14-94-00579-CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 7, 1996.

Rehearing Overruled April 4, 1996.

Karen Ann Delcourt, Houston, pro se.

Katrina D. Packard, Houston, Jolene Wilson–Glah, Houston, for appellees.

Before YATES, FOWLER and O'NEILL, JJ.

**OPINION**

O'NEILL, Justice.

Karen Ann Delcourt, appellant, appeals from summary judgments in favor of Dr. Edward Silverman, Ph.D., and Norma Levine Trusch, appellees, in a suit arising out of a child custody dispute. Delcourt brings nine points of error alleging the trial court erred in granting the summary judgments. We affirm.

## I. Factual Background

On May 17, 1988, Delcourt and Tony Moreland were divorced. Moreland was named managing conservator of the couple's minor child, Tiffany; Delcourt was granted visitation. On February 17, 1989, Moreland filed a motion to modify asking the court to restrict Delcourt's access to Tiffany. Delcourt filed a motion asking to be appointed sole managing conservator. Following a jury trial, Moreland was removed as sole managing conservator, and Delcourt was appointed sole managing conservator.

In March 1990, Moreland moved to modify custody based on allegations that Tiffany's "present environment may endanger her physical health or significantly impair her emotional development." The trial court held a hearing and issued temporary orders removing Delcourt as the sole managing conservator and appointing Moreland temporary managing conservator. Delcourt, though served with notice, did not appear at the hearing. In the same order, the trial court appointed Dr. Edward Silverman, Ph.D., a psychologist, to evaluate Tiffany, Delcourt, and Moreland. The order required Silverman to interview and evaluate the parties, and file a written report with the trial court. A few days later, the trial court appointed Norma Levine Trusch as guardian ad litem for Tiffany.

In October 1990, a jury trial was held to determine the custody issue. The jury found Delcourt should be removed as sole managing conservator and Moreland should be appointed. The trial court entered an order based on the jury's verdict.

On October 1, 1992, Delcourt filed the present suit against Silverman and Trusch.

Delcourt filed several amended petitions alleging numerous causes of action. Silverman and Trusch filed motions for summary judgment arguing that as a matter of law: (1) they owed no duty to Delcourt; and (2) they were protected by judicial immunity for actions taken within the scope of their appointments. The trial court granted the motions for summary judgment.

## II. Standard of Review

■ Summary judgment for a defendant is proper where the summary judgment evidence negates an essential element of the plaintiff's cause of action as a matter of law or establishes all elements of an affirmative defense as a matter of law. *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990). The Texas Supreme Court has clearly articulated the appropriate standards to be used when reviewing summary judgments:

1. the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law;

2. in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

3. every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Karl v. Oaks Minor Emergency. Clinic,* 826 S.W.2d 791, 794 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

■ When an order granting summary judgment does not specify the grounds upon which it is granted, as in the present case, the judgment will be affirmed on appeal if any of the grounds raised in the motion are meritorious. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989). The two grounds for summary judgment urged by Silverman and Trusch were: (1) no duty; and (2) judicial immunity. Delcourt has contested the summary judgments both substantively and procedurally. We will first address the procedural issues, then consider appellees' affirmative defense of judicial immunity.

## III. Discussion

### A. Procedural Issues

In her first point of error, Delcourt claims the trial court erred in granting the summary judgments for Silverman and Trusch because their motions for summary judgment failed to address all of the causes of action alleged by Delcourt in her Third Amended Original Petition. Delcourt's claim is apparently based on the fact that Silverman and Trusch filed their motions before Delcourt filed her Third Amended Original Petition. Although there is some dispute in this case as to whether the Second or Third Amended Original Petition was the live pleading at the time of the hearing on the motions for summary judgment, it is immaterial because the same causes of action are raised in both petitions: (1) negligence; (2) fraud; (3) civil conspiracy; and (4) intentional infliction of severe mental distress.

In her brief, Delcourt argues that her Third Amended Original Petition alleged claims for: (1) breach of common law duty; (2) breach of court appointed duty; (3) negligence; (4) fraud; (5) violation of her constitutional and parental rights; (6) civil conspiracy; (7) tortious interference with custodial and parental rights; (8) intentional infliction of severe mental distress; and (9) failure to provide standard of care. However, we have closely reviewed Delcourt's Third Amended Original Petition and find she did not allege all of the causes of action she claims in her appellate brief. Nowhere does Delcourt allege "tortious interference with custodial and parental rights," even if such a cause of action was recognized in Texas. Although Delcourt does summarily state she was denied "her constitutional right to due process," she fails to articulate facts supporting such a claim. Further, several of the causes of action that Delcourt claims she alleged are not specifically recognized in Texas and are merely permutations of ordinary negligence, e.g., breach of common-law duty, breach of court-appointed duty, and failure to provide standard of care. A careful examination of

Delcourt's Third Amended Original Petition shows she pled the four legally cognizable causes of action stated above: (1) negligence; (2) fraud; (3) civil conspiracy; and (4) intentional infliction of severe mental distress.

The motions for summary judgment filed by Silverman and Trusch allege they are entitled to judgment as a matter of law because: (1) they owed no duty to Delcourt, an argument relevant to those causes of action involving an element of duty; and (2) they are entitled to judicial immunity, an argument relevant to all of the causes of action alleged by Delcourt. Thus, the motions address all causes of action alleged in the Third Amended Original Petition. Delcourt's first point of error is overruled.

In her second point of error, Delcourt argues the trial court erred in granting summary judgment in favor of Trusch because Trusch served her with a response during the hearing on the motion for summary judgment. This response allegedly contained additional affidavits as summary judgment evidence. In view of our decision in points three through eight, discussed below, we find this point of error meritless. The summary judgment evidence attached to Trusch's amended motion for summary judgment was sufficient to entitle her to prevail, therefore, whether the response containing the additional affidavits was untimely is immaterial. Appellant's second point of error is overruled.

### B. Substantive Issues

In points of error three through five and nine, Delcourt essentially contends the trial court should not have granted summary judgment in favor of Silverman and Trusch because: (1) there was a material fact issue regarding the existence of a duty; and (2) appellees were not entitled to absolute immunity. We will first address whether Silverman and Trusch were entitled to summary judgment based on their affirmative defense of absolute immunity.

### 1. Absolute Immunity

This case presents questions of first impression in Texas: whether a psychologist, appointed under Rule 167a(d)(1) in a case arising under Title II of the Texas Family Code, and a guardian ad litem, appointed under article 11.10 of the Texas Family Code, are entitled to absolute immunity for actions taken pursuant to their appointments.

■■■■ It is well-established that judges are absolutely immune from liability for judicial acts that are not performed in the clear absence of all jurisdiction, no matter how erroneous the act or how evil the motive. *Johnson v. Kegans,* 870 F.2d 992, 995 (5th Cir.), *cert. denied,* 492 U.S. 921, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989); *Turner v. Pruitt,* 161 Tex. 532, 342 S.W.2d 422, 423 (1961). Judges are granted this broad immunity because of the special nature of their responsibilities. *Kegans,* 870 F.2d at 995. Judicial immunity, which is firmly established at common law, protects not only the individual judges, but benefits the public "whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences." *Bradley v. Fisher,* 80 U.S. (13 Wall) 335, 350, 20 L.Ed. 646 (1871) (citations omitted).

■■■■ When judges delegate their authority or appoint others to perform services for the court, the judicial immunity that attaches to the judge may follow the delegation or appointment. *Byrd v. Woodruff,* 891 S.W.2d 689, 707 (Tex.App.—Dallas 1994, writ denied). Officers of the court who are integral parts of the judicial process, such as court clerks, law clerks, bailiffs, constables issuing writs, and court-appointed receivers and trustees are entitled to judicial immunity if they actually function as an arm of the court. *Id.* See also *Babcock v. Tyler,* 884 F.2d 497 (9th Cir.1989), *cert. denied,* 493 U.S. 1072, 110 S.Ct. 1118, 107 L.Ed.2d 1025 (1990) (holding social worker absolutely immune); *Demoran v. Witt,* 781 F.2d 155 (9th Cir.1985) (holding probation officers absolutely immune); *Wiggins v. New Mexico State Supreme Court Clerk,* 664 F.2d 812 (10th Cir.) (holding state supreme court justices and clerk absolutely immune), *cert. denied,* 459 U.S. 840, 103 S.Ct. 90, 74 L.Ed.2d 83 (1982); *Ashbrook v. Hoffman,* 617 F.2d 474 (7th Cir. 1980) (holding partition commissioner abso-

lutely immune). This type of absolute immunity is referred to as "derived judicial immunity." *See Clements v. Barnes,* 834 S.W.2d 45, 46 (Tex.1992). The policy underlying derived judicial immunity that protects participants in judicial and other adjudicatory proceedings is sound. Not only does the policy guarantee an independent, disinterested decision-making process, these immunities prevent the harassment and intimidation that might otherwise result if disgruntled litigants could vent their anger by suing either the person who presented the decision maker with adverse information, or the person or persons who rendered an adverse opinion. *Kegans,* 870 F.2d at 996–97.

■■■ Courts around the country have followed the lead of the United States Supreme Court and adopted a functional approach in determining whether a party is entitled to absolute immunity. *See Gardner v. Parson,* 874 F.2d 131, 145–46 (3d Cir.1989); *Hodorowski v. Ray,* 844 F.2d 1210, 1213–15 (5th Cir.1988); *Meyers v. Contra Costa County Dep't of Social Serv.,* 812 F.2d 1154, 1157 (9th Cir.), *cert. denied,* 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987); *Malachowski v. City of Keene,* 787 F.2d 704, 712 (1st Cir.), *cert. denied,* 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986). Under the functional approach, courts determine whether the activities of the party seeking immunity are intimately associated with the judicial process. *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–96, 47 L.Ed.2d 128 (1976). The question is whether the activities undertaken by the party are "functions to which the reasons for absolute immunity apply with full force." *Imbler v. Pachtaman,* 424 U.S. at 430, 96 S.Ct. at 995. In other words, a party is entitled to absolute immunity when the party is acting as an integral part of the judicial system or an "arm of the court". *Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983).

We agree with those courts that have applied the functional approach to determine whether a party should be immune from suit based on derived judicial immunity. We must now determine whether, applying a functional analysis, the psychologist and the guardian ad litem in this case were entitled to summary judgment based on absolute immunity.

### a. The psychologist

■■■ Silverman, a psychologist, was appointed by the court to meet with Delcourt, her ex-husband, and the minor child. Under Rule 167a(d), the court, in cases arising under Title II of the Texas Family Code, may appoint one or more psychologists to make any and all appropriate mental examinations of the child or children who are the subject of the suit or any other parties to the suit. Tex.R.Civ.P. 167a(d)(1).

■■■ Applying the functional approach, a psychologist who is appointed by the court is entitled to absolute immunity if he or she is appointed to fulfill quasi-judicial functions intimately related to the judicial process. *Myers v. Morris,* 810 F.2d 1437, 1466–67 (8th Cir.), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); *S.T.J. v. P.M.,* 556 So.2d 244, 246 (La.Ct.App.1990) (citing *Moses v. Parwatikar,* 813 F.2d 891 (8th Cir.), *cert. denied,* 484 U.S. 832, 108 S.Ct. 108, 98 L.Ed.2d 67 (1986)). The focus is on the nature of the function performed, not the identity of the actor. *Lavit v. Superior Court of Arizona,* 173 Ariz. 96, 839 P.2d 1141, 1144 (1992) (citing *Forrester v. White,* 484 U.S. 219, 230, 108 S.Ct. 538, 545–46, 98 L.Ed.2d 555 (1988)). The question is whether the psychologist's activity is such an integral part of the judicial process that to deny immunity would disserve the broader public interest that non-judicial officers act without fear of liability. *Lavit,* 839 P.2d at 1144.

Numerous courts have extended absolute immunity to psychiatrists and other mental health experts assisting the court in criminal cases. *See, e.g., Moses v. Parwatikar,* 813 F.2d at 892 (holding psychiatrist entitled to absolute immunity when appointed in competency examination). The consistent reasoning given by the courts in these cases is that the psychiatrist or mental health professional performed a special task closely related to the judicial process pursuant to a court directive. *Lavit,* 839 P.2d at 1145.

We believe this reasoning also applies to mental health experts appointed to provide

psychological expertise in child custody suits. *Id.* Many courts recognize that psychiatrists and psychologists performing court-ordered custody evaluations perform a judicial function and enjoy absolute immunity. *See, e.g., Williams v. Rapperport,* 699 F.Supp. 501 (D.Md.1988), *aff'd,* 879 F.2d 863 (4th Cir.), *cert. denied,* 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 193 (1989); *Doe v. Hennepin County,* 623 F.Supp. 982 (D.Minn.1985); *LaLonde v. Eissner,* 405 Mass. 207, 539 N.E.2d 538 (1989). When a court appoints a mental health professional to examine the child and the parents in a custody proceeding, the professional is acting as a fact finder for the court. The court relies on the professional to provide information essential to the decision-making process. Without the protection of absolute immunity, such professionals would be, at the very least, reluctant to accept these appointments. This would in turn inhibit judges from performing their duties.

Applying the functional approach to the facts of this case, we review Silverman's summary judgment proof to determine whether he proved as a matter of law that he functioned as an extension of the court. In support of his motion, Silverman attached an affidavit from Linda Motheral, who, during the relevant time period, was the Associate Judge of the 257th District Court. In the affidavit, Motheral states that she appointed Silverman to meet with the parents and the minor child. Motheral further states that Silverman was appointed to "assist in the determination of the emotional and medical issues surrounding the allegations of sexual abuse." Motheral asserts Silverman served at her request as an officer of the court to assist her in protecting the interests of the minor child.

In addition to the Motheral affidavit, Silverman attached his own affidavit stating he met with the parents and the minor child as requested and conducted an evaluation. He maintains his evaluation was conducted as an "agent" of the court, and each interview and evaluation was in accordance with the order of the court. His affidavit states that, during the trial, he testified concerning the interviews and evaluations and gave an opinion as the court-appointed mental health expert. The summary judgment evidence presented by Silverman established he was appointed by, and acted as a functionary of, the court when he took the actions that form the basis of Delcourt's claims. Thus, Silverman's summary judgment proof showed that he was entitled to absolute judicial immunity as a matter of law.

■ Once Silverman produced sufficient evidence to establish his right to summary judgment, Delcourt was required to set forth controverting evidence to raise a fact issue to avoid the summary judgment. *See Louisiana Natural Gas Pipeline, Inc. v. Bludworth Bond Shipyard, Inc.,* 875 S.W.2d 458, 460 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (citing *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 936–37 (Tex.1972)). However, the responses filed by Delcourt present no summary judgment evidence to defeat Silverman's affirmative defense of derived judicial immunity. Therefore, the trial court did not err in granting summary judgment in favor of Silverman.

#### b. The guardian ad litem

■ Trusch was appointed by the court to act as guardian ad litem for Tiffany under article 11.10 of the Texas Family Code. As a court-appointed guardian ad litem, Trusch moved for summary judgment claiming absolute judicial immunity. The Dallas Court of Appeals has addressed the liability of a guardian ad litem appointed pursuant to Texas Rule of Civil Procedure 173 in the context of a minor settlement hearing. *See Byrd,* 891 S.W.2d at 704. Additionally, the Texas Supreme Court, in *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66, 71 (1920), decided that a guardian ad litem could not be held personally responsible to pay a final judgment or court costs because an ad litem is not a party to the litigation. However, the liability of a guardian ad litem appointed pursuant to section 11.10 of the Texas Family Code has never been addressed.[1] To determine this

---

1. At least one commentator has expressed concern over the fact that there are no Texas cases that address these issues: "As a result, it may be anticipated that there will be the potential for increasing shortages of available and qualified attorneys over the next few years who will be

issue, we must examine the nature of the relationship among the guardian ad litem, the minor, the parents and, in this instance, the family court. *See Byrd*, 891 S.W.2d at 704.

In *Byrd*, the Dallas Court of Appeals determined the issue of immunity by focusing on the nature of the relationship between the ad litem and the minor in the context of a minor settlement hearing involving the apportionment of settlement proceeds. The appointment of a guardian ad litem in such a case is authorized only when there exists a conflict between the next friend and the minor. 891 S.W.2d at 705; See Tex.R.Civ.P. 173.² A guardian ad litem, once appointed, displaces the next friend and becomes the personal representative of the minor. *Id.* The court compared the relationship to that of a guardian of a ward or the personal representative of an estate, and held that a fiduciary relationship existed between a minor and a guardian ad litem appointed under Rule 173 within the context of a friendly suit. *Id.* at 706. As a fiduciary, the ad litem is empowered to make decisions for, and act on behalf of, the minor. *Id.* at 708 (citing *Newman v. King*, 433 S.W.2d 420, 421 (Tex. 1968)); *Dawson v. Garcia*, 666 S.W.2d 254, 265 (Tex.App.—Dallas 1984, no writ); *Pleasant Hills Children's Home of the Assemblies of God, Inc. v. Nida*, 596 S.W.2d 947, 951 (Tex.Civ.App.—Fort Worth 1980, no writ).

 In discharging its duty under Rule 173, the guardian ad litem has a duty to conduct a thorough investigation and evaluate: (1) the damages suffered by the minor; (2) the adequacy of the settlement; (3) the proposed apportionment of settlement proceeds among the interested parties; (4) the proposed manner of disbursement of the settlement proceeds; and (5) the amount of attorney's fees charged by the minor's attorney. *Byrd*, 891 S.W.2d at 707. The ad litem must then make a recommendation to the trial court on the minor's behalf. *Id.* These

duties place the ad litem in the capacity of the minor's personal representative, displacing the next friend. Thus, the ad litem is acting as an advocate and not a representative of the court. *Id.* at 708. In that particular situation it would be unfair to deny a minor the ability to seek recourse for inadequate representation. *Id.* The court concluded, therefore, that an ad litem appointed under Rule 173 to represent a minor during settlement proceedings can be liable in a civil action for damages resulting from a breach of his duties as the minor's personal representative. *Id.*

 The decision in *Byrd* is consistent with the functional approach applied by the federal courts when analyzing a claim of judicial immunity. Under the functional approach, a guardian ad litem is absolutely immune when acting as an actual functionary or arm of the court. *Gardner*, 874 F.2d at 146. *See also Imbler v. Pachtman*, 424 U.S. at 430–31, 96 S.Ct. at 994–96; *Hodorowski v. Ray*, 844 F.2d at 1213–15. All of the duties enumerated by the court in *Byrd* are performed for the minor and for the minor's interest; they are not normally performed by the appointing judge. When an ad litem is appointed under Rule 173, he or she is not acting as an "arm of the court" or performing functions the court normally performs, because trial courts do not act as advocates. *See Byrd*, 891 S.W.2d at 707. The ad litem appointed under Rule 173 is acting as a personal representative and advocate for the interests of the minor; the fact that he or she was appointed by the court is merely procedural. Therefore, this type of ad litem is not and should not be entitled to absolute immunity. *Id.*

To determine whether absolute immunity applies to a guardian ad litem appointed pursuant to section 11.10 of the Texas Family Code, we must examine the duties contemplated by the appointment. Considerations

---

willing to risk this uncertainty and exposure." Jim Guiberteau and Linda Motheral, *The Changing Role of Guardian and Attorney Ad Litems*, 58 Tex.B.J. 955, 957 (1995).

**2.** Rule 173 provides that when a minor is a party to a suit either as plaintiff, defendant, or interve-

nor and is represented by a next friend or a guardian who appears to the court to have an interest adverse to the minor, the court must appoint a guardian ad litem for the minor. Tex. R.Civ.P. 173.

favoring immunity have generally been found in the context of disputes involving child custody or allegations of neglect or abuse of a child. For example, in *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir.1984), parents brought suit against their son's guardian ad litem alleging constitutional violations arising from the alleged unlawful termination of their parental rights. The Sixth Circuit held that the guardian ad litem was entitled to absolute immunity because the ad litem must act in the best interests of the child, and "[t]his position clearly places him squarely within the judicial process to accomplish that goal." *Id.* Without immunity, the court held, the ad litem could not function without the worry of possible later harassment and intimidation from dissatisfied parents. *Id.* In *Gardner*, the Third Circuit agreed with the *Kurzawa* approach to the extent that it was based on the guardian's function rather than merely his status. *Gardner*, 874 F.2d at 145, n. 21.

Relying on *Kurzawa*, other courts have reached similar results. For example, in *Cok v. Cosentino*, 876 F.2d 1 (1st Cir.1989), an ex-wife sued the guardian ad litem for her minor child in a divorce proceeding, alleging that he acted without any guidelines, qualifications, duties, obligations or responsibilities and engaged in a pattern of racketeering activities. The First Circuit held that the ad litem was involved in the adjudicative process and shared in the family court judge's absolute immunity. *Id.* at 3. Similarly, in *Myers v. Morris*, 810 F.2d 1437 (8th Cir), *cert. denied*, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987), guardians who were appointed by a family court to investigate allegations of sexual abuse were held to be absolutely immune from suit for their oral testimony, questioning of the children, and the provision of their reports and recommendations to the family court. *Id.* at 1466–67. *See also Ward v. San Diego County Dep't. of Social Servs.*, 691 F.Supp. 238, 240 (S.D.Cal. 1988) (holding guardian ad litem was acting

as extension of court when investigating facts and reporting to court what placement was in child's best interest).[3]

The considerations favoring immunity in the child custody or abuse setting are numerous and compelling. First, the guardian ad litem must be able to make impartial recommendations to the court. This ability may be impeded in child custody cases because:

[o]ften, parents are pitted against one another in an intensely personal and militant clash. Innocent children may be pawns in the conflict. To safeguard the best interests of the children, however, the guardian's judgment must remain impartial, unaltered by the intimidating wrath and litigious penchant of disgruntled parents. Fear of liability to one of the parents can warp judgment that is crucial to vigilant loyalty for what is best for the child; the guardian's focus must not be diverted to appeasement of antagonistic parents.

*Short v. Short*, 730 F.Supp. 1037, 1039 (D.Colo.1990). Thus, the threat of liability could distort the ad litem's investigative role and substantially impede his or her ability to ascertain and report to the court the best placement for the child. In turn, "the ability of the judge to perform his or her judicial duties would be impaired and the ascertainment of truth obstructed." *Ward*, 691 F.Supp. at 240.

Second, the availability of qualified attorneys to represent children in the midst of a custody dispute might be affected if disgruntled or vituperative parents could hold the guardian ad litem personally liable. *Collins v. Tabet*, 111 N.M. 391, 806 P.2d 40, 51 (1991); *see also* Jim Guiberteau and Linda Motheral, *The Changing Role of Guardian and Attorney Ad Litems*, 58 TEX.B.J. 955, 957 (1995). Finally, the source and extent of the guardian ad litem's compensation may be considered in determining whether the ad litem is functioning as an advocate or an arm of the court. For example, when a guardian

---

**3.** The majority of these opinions dealing with the issue of derived judicial immunity involve federal civil rights cases brought under 42 U.S.C. § 1983 (1988). *But see Tindell v. Rogosheske*, 421 N.W.2d 340, 341 (Minn.Ct.App.), *aff'd*, 428 N.W.2d 386 (Minn.1988) (holding guardian ad litem absolutely immune from negligence claim). Though the law relating to derived judicial immunity developed substantially in the civil rights context, we see no reason to limit the basic principles applicable in those cases. *See Collins v. Tabet*, 111 N.M. 391, 806 P.2d 40, 47 (1991).

ad litem is compensated from the ward's resources, "there is more reason to hold that the guardian is functioning in a capacity similar to that of a private attorney than there is in cases when he or she is compensated by, for example, both parents in a custody dispute ... or from public funds...." *Collins*, 806 P.2d at 51 n. 7. Section 11.10(d) of the Texas Family Code provides that the ad litem fee is to be paid by the parents unless they are indigent, in which case the fee will be paid from the general funds of the county where the suit is heard.

Based upon our review of the available case law, we hold that a guardian ad litem appointed under article 11.10 of the Texas Family Code is absolutely immune from liability for his or her actions taken pursuant to and within the scope of their appointment, provided that the appointment contemplates the ad litem acting as an extension of the court.

To be entitled to summary judgment in this case, Trusch had to prove as a matter of law that: (1) the appointment contemplated she act as an extension or arm of the court; and (2) she did not depart from the scope of the appointment. First, we will look at the summary judgment proof relating to the nature of Trusch's appointment. Attached to her motion for summary judgment is an affidavit by Associate Judge Linda Motheral. In the affidavit, Motheral states that she appointed Trusch to serve as guardian ad litem. She further states that as guardian ad litem, "it would be within the scope of Ms. Trusch's duties to meet with both of the parties to the custody suit to gather information from professionals, lay witnesses and police officers regarding Ms. Delcourt's allegations of sexual abuse." Finally, Motheral states that Trusch served at Motheral's request "as an officer of the Court to assist me in properly protecting the minor child's interests." Thus, the summary judgment evidence shows Trusch's appointment contemplated that she would function on behalf of the court.

Trusch also attached her own affidavit to her motion for summary judgment. In the affidavit, Trusch states that she was appointed "to assist the court in its determination of the emotional and legal issues surrounding the allegations of sexual abuse and their affect on the minor child, Tiffany." Trusch also states that in carrying out her duties she was acting as an agent of the court. The other paragraphs in the affidavit indicate that Trusch acted within the scope of her appointment and did not depart from her role as a functionary of the court.

The summary judgment evidence presented by Trusch was sufficient to establish the affirmative defense of derived judicial immunity. When a defendant produces sufficient evidence to establish the right to a summary judgment, the plaintiff must set forth sufficient evidence to give rise to a fact issue to avoid summary judgment. *E.g., Louisiana Natural Gas Pipeline*, 875 S.W.2d at 460 (citing *"Moore" Burger*, 492 S.W.2d at 936–37). Once Trusch presented sufficient summary judgment evidence to establish her affirmative defense of absolute immunity, the burden shifted to Delcourt to provide controverting evidence. However, Delcourt presented no summary judgment evidence controverting either (1) the scope of Trusch's appointment, or (2) Trusch's evidence that she acted within the scope of that appointment. The gravamen of Delcourt's complaint is dissatisfaction with the manner in which Silverman and Trusch performed their duties. Delcourt presented no evidence that any of their actions were outside the scope of their appointments. Thus, the trial court did not err in granting summary judgment in favor of Trusch.

We overrule points of error three through five and nine.

### 2. Affidavits

In point of error six, appellant claims the trial court erred in granting summary judgment in favor of Silverman and Trusch because their affidavits did not "properly set forth a standard of care, were conclusions and opinions and are not competent summary judgment evidence."

If Silverman and Trusch had moved for summary judgment on the ground that they had complied with the applicable standard of care for court-appointed psychiatrists and

guardians ad litem, respectively, then it is true, as Delcourt contends, that they would be required to articulate the applicable standard of care and demonstrate their compliance therewith. *See, e.g., Coan v. Winters,* 646 S.W.2d 655, 657 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e). However, Silverman and Trusch did not move for summary judgment on that basis. Rather, they claimed that they had *no duty* to Delcourt as a matter of law and that, in any event, they were entitled to absolute immunity. Therefore whether or not their affidavits set forth a standard of care is immaterial.

Moreover, we have reviewed the affidavits presented by Silverman and Trusch and find they are not conclusory. The affidavits set forth factual allegations concerning the events in question as they relate to the no duty and absolute immunity issues. We hold the affidavits were competent summary judgment evidence. Appellant's sixth point of error is overruled.

### 3. Constitutional Violations, Conspiracy and Absolute Immunity

In her seventh point of error, appellant claims the trial court erred in granting summary judgment because absolute immunity cannot protect a defendant from claims of constitutional violations or conspiracy. Citing *Duncan v. Peck,* 844 F.2d 1261 (6th Cir.1988),[4] appellant argues there is no immunity for alleged constitutional claims when private parties, such as Silverman and Trusch, conspire with an official to deprive a person of constitutional rights. We disagree.

We have already determined that appellant did not raise any constitutional claims. Moreover, we do not believe that a conspiracy claim should defeat the affirmative defense raised by Silverman and Trusch based upon derived judicial immunity. In *Moses v. Parwatikar,* the Eighth Circuit rejected Delcourt's argument, emphasizing that exceptions to absolute immunity should not be

freely created. 813 F.2d at 893. The court held:

> To defeat this doctrine [absolute immunity] by pleading a conspiracy would be to create an exception where none was intended. Clearly a judge who conspires to violate a person's constitutional rights acts maliciously or corruptly. However, the need to preserve the judge's independence requires a grant of absolute immunity. The same policy requires us to hold a court appointed psychiatrist immune. Even if Dr. Parwatikar conspired to find Moses competent to stand trial, this suit for damages should be barred because conspiracy is nothing more than a specific act of corruption.

*Id.*

Other federal courts have also ruled that a claim of conspiracy does not defeat absolute immunity. *See, e.g., Ashelman v. Pope,* 793 F.2d 1072, 1078 (9th Cir.1986); *Dykes v. Hosemann,* 776 F.2d 942, 946 (11th Cir.1985), *cert. denied,* 479 U.S. 983, 107 S.Ct. 569, 93 L.Ed.2d 574 (1986); *Holloway v. Walker,* 765 F.2d 517, 523 (5th Cir.), *cert. denied,* 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985). Appellant's seventh point of error is overruled.

### 4. The Appointments

In point of error eight, appellant contends the trial court should have granted her motion for new trial because "there were no court orders rendered or signed by Judge Lee appointing either one of the Appellees." Essentially appellant complains that, because there are no written orders in the record showing Silverman and Trusch were in fact appointed, a material fact issue exists. We disagree. Though no written orders were presented by Silverman or Trusch showing they were appointed, both included their own affidavits and an affidavit from Linda Motheral stating they were appointed. These affidavits were uncontested by Delcourt in her response to the motions for summary judg-

---

4. We note that many courts have specifically criticized and/or declined to follow the *Duncan* case. *See, e.g., Rodriques v. Furtado,* 950 F.2d 805, 814 (1st Cir.1991); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 787 F.Supp. 471 (E.D.Pa.1992), *aff'd in part, vacated in part,* 20 F.3d 1250 (3d Cir.1994); *Shipley v. First Federal Sav. & Loan Ass'n of Delaware,* 703 F.Supp. 1122, 1132 (D.Del.1988), *aff'd,* 877 F.2d 57 (3d Cir.1989), *cert. denied,* 496 U.S. 938, 110 S.Ct. 3218, 110 L.Ed.2d 666 (1990).

ment. In addition, the order signed by Judge Robertson on October 19, 1990, on the motion to modify in the suit affecting the parent-child relationship, which was part of the summary judgment proof, acknowledges the appointments of, and services performed by, Silverman and Trusch. We find the summary judgment evidence sufficient to prove as a matter of law that Silverman and Trusch were appointed by the court. Appellant's eighth point of error is overruled.

## IV. Conclusion

The trial court correctly granted summary judgment in favor of Silverman and Trusch because they proved each essential element of their affirmative defense of absolute immunity as a matter of law.

Because we find Silverman and Trusch were entitled to summary judgment based on immunity, we do not reach the issue of no duty that was presented as an alternative ground for summary judgment.

The judgment of the trial court is affirmed.