**Sandra HALSEY, Appellant,**

v.

**DALLAS COUNTY, TEXAS, Appellee.**

**No. 05–00–01518–CV.**

Court of Appeals of Texas,
Dallas.

May 30, 2001.

Rehearing Overruled July 10, 2001.

---

82

Raymond G. Wheless, Wheless & Walker, Cynthia McCrann Wheless, Attorney At Law, Plano, for Appellant.

John Clark Long, IV, Asst. Dist. Atty., Dallas, for Appellee.

Before Justices JAMES, MOSELEY, and ROACH.

## OPINION

JAMES, Justice.

Sandra Halsey brings this interlocutory appeal of a denial of her motion for summary judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp. 2001). Halsey brings one point of error contending she was protected by derived judicial immunity, and therefore, the trial court erred in denying her motion for summary judgment. For the reasons set forth below, we reverse and render summary judgment for Halsey on her affirmative defense of judicial immunity.

## Background

Sandra Halsey was the official court reporter for the Criminal District Court No. 3 in Dallas County. Halsey was paid a salary for her services as a court reporter and also was compensated for preparing the reporter's record of the trials on which she reported. Halsey reported and prepared the reporter's record in the case styled *State of Texas v. Darlie Lynn Routier*, Cause No. F96–39973–J. On June 2, 2000, after Halsey had prepared and filed the reporter's record in the *Routier* case, Dallas County brought suit against Halsey for fraud, breach of contract, and violations of the Texas Deceptive Trade Practices Act. Although Halsey certified the reporter's record was "correct, just and unpaid," Susan Simmons, the certified court reporter who later corrected the *Routier* transcript, testified that approximately 18,000 errors were found in 6,000 pages of transcript. On June 8, 2000, Halsey filed a motion for summary judgment asserting the defense of judicial immunity. The trial court denied Halsey's motion for summary judgment on August 31, 2000.

Halsey brought this appeal from the denial of her motion for summary judgment.

## Standard of Review

In her sole point of error, Halsey contends the trial court erred in failing to grant her summary judgment motion on the grounds that she had derived judicial immunity in her capacity as the official court reporter for the district court.

The standard for reviewing a summary judgment is well established:

> 1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law.
>
> 2. In deciding whether there is a disputed material fact issue precluding summary judgment, we take the evidence favorable to the nonmovant as true.
>
> 3. We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor.

*See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–59 (Tex.1985); *Bartlett v. Cinemark USA, Inc.*, 908 S.W.2d 229, 233 (Tex.App.—Dallas 1995, no writ). We apply the same standard for reviewing the denial of summary judgment as we do for the granting of summary judgment. *See Ervin v. James*, 874 S.W.2d 713, 715 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

To prevail on summary judgment, a defendant as movant must either (1) disprove at least one element of each of the plaintiff's theories of recovery or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Hoover v. Gregory*, 835 S.W.2d 668,

671 (Tex.App.—Dallas 1992, writ denied). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

The purpose of the summary judgment rule is not to provide a trial by deposition or affidavit. Rather, the purpose of the rule is to provide a method of summarily ending a case that involves only a question of law or no genuine issue of fact. *Gaines v. Hamman,* 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962); *Port Distrib. Corp. v. Fritz Chem. Co.,* 775 S.W.2d 669, 670 (Tex. App.—Dallas 1989, writ dism'd by agr.). The rule is not intended to deprive litigants of their right to a full hearing on the merits of any real fact issue. *See Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952); *Bartlett,* 908 S.W.2d at 233.

In the present case, the facts are not in dispute. Whether official court reporters have the protection of judicial immunity is a question of law for this Court.

### Derived Judicial Immunity

■ It is well established that judges are absolutely immune from liability for judicial acts that are not performed in the clear absence of all jurisdiction, no matter how erroneous the act or how evil the motive. *Turner v. Pruitt,* 161 Tex. 532, 534–35, 342 S.W.2d 422, 423 (1961); *Delcourt v. Silverman,* 919 S.W.2d 777, 781–82 (Tex.App.—Houston [14th Dist.] 1996, writ denied); *Johnson v. Kegans,* 870 F.2d 992, 995 (5th Cir.1989). Judges are granted broad immunity because of the special nature of their responsibilities. *Delcourt,* 919 S.W.2d at 781. Judicial immunity, which is firmly established at common law, protects not only individual judges but benefits the public in "whose interest it is

that the judges should be at liberty to exercise their functions with independence, and without fear of consequences." *Id.* (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 350, 20 L.Ed. 646 (1871)).

■ When judges delegate their authority or appoint others to perform services for the court, the judicial immunity that attaches to the judge may follow the delegation or appointment. *Byrd v. Woodruff,* 891 S.W.2d 689, 707 (Tex.App.—Dallas 1994, writ dism'd by agr.). Officers of the court who are integral parts of the judicial process, such as court clerks, law clerks, bailiffs, constables issuing writs, and court-appointed receivers and trustees, are entitled to judicial immunity if they actually function as an arm of the court. *Id.; Delcourt,* 919 S.W.2d at 781–82. This type of absolute immunity is referred to as "derived judicial immunity." *See Clements v. Barnes,* 834 S.W.2d 45, 46 (Tex.1992). The policy underlying derived judicial immunity guarantees an independent, disinterested decision-making process, as well as prevents harassment and intimidation that might otherwise result if disgruntled litigants could vent their anger by suing the person who presented the decision maker with adverse information. *See Delcourt,* 919 S.W.2d at 782.

■ Courts around the country have followed the lead of the United States Supreme Court and adopted a functional approach to determine whether a party is entitled to absolute immunity. *See Delcourt,* 919 S.W.2d at 782 (citing *Gardner v. Parson,* 874 F.2d 131, 145–46 (3d Cir. 1989); *Hodorowski v. Ray,* 844 F.2d 1210, 1213–15 (5th Cir.1988); *Meyers v. Contra Costa County Dep't of Soc. Serv.,* 812 F.2d 1154, 1157 (9th Cir.1987); *Malachowski v. City of Keene,* 787 F.2d 704, 712 (1st Cir. 1986)). Under the functional approach, courts determine whether the activities of the party seeking immunity are intimately associated with the judicial process. *Delc-*

*ourt,* 919 S.W.2d at 782 (citing *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). The question is whether the activities undertaken by the party are "functions to which the reasons for absolute immunity apply with full force." *Id.* In other words, a party is entitled to absolute immunity when the party is acting as an integral part of the judicial system or an "arm of the court." *Id.* (citing *Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)).

■ We agree with those courts that have applied the functional approach to determine whether a party should be immune from suit based on derived judicial immunity. Applying a functional analysis, we must now determine whether Halsey, acting within her duties as an official court reporter, was functioning as an integral arm of the court and was therefore entitled to summary judgment based on her affirmative defense of judicial immunity.

■ The Texas Government Code requires that each judge of a court of record appoint an official reporter. TEX. GOV'T CODE ANN. § 52.041 (Vernon 1998). An official court reporter is a sworn officer of the court and holds office at the pleasure of the court. *Id.* The duties of a court reporter are vital to the judicial process; the court reporter must make a record of the court proceedings, make note of objections and rulings, mark and file exhibits, prepare requested transcripts, and perform other acts relating to the reporter's official duties as the trial court directs. *See* TEX. GOV'T CODE ANN. § 52.046 (Vernon 1998); *see also* TEX.R.APP. P. 13, 34.6, 35. An official court reporter is subject to mandamus for refusal to perform her official duties. *See State v. Creel,* 895 S.W.2d 899, 900 (Tex.App.—Waco 1995, orig. proceeding); *City of Ingleside v. Johnson,* 537 S.W.2d 145, 150 (Tex.App.—Corpus Christi 1976, orig. proceeding). Without a proper record, a party would be precluded from presenting a complaint for appellate review; a party must present a record to the appellate court sufficient to show error requiring reversal. *See* TEX.R.APP. P. 33, 34. Furthermore, if the reporter's record is lost or destroyed, rule of appellate procedure 34.6(f) allows for a new trial under certain circumstances. Based on these considerations, we conclude the official court reporter's duties are an integral part of the judicial system and are intimately associated with the judicial process. In other words, the trial judge's judicial immunity extends to the official court reporter because the official court reporter functions as an "arm of the court."

Further, the policies underlying derived judicial immunity—the need to guarantee an independent, disinterested decision-making process and prevent harassment and intimidation of those through whom the court functions, *see Byrd,* 891 S.W.2d at 707; *Delcourt,* 919 S.W.2d at 781–82,—apply with equal force to suits against court reporters as well as to suits against those previously found to lie within the ambit of derived judicial immunity. Allowing a court reporter to be sued by disgruntled litigants based on the reporter's performance of his or her official duties would tend to subvert those policies, just as surely as if litigants were allowed to sue court clerks, law clerks, bailiffs, constables issuing writs, and court-appointed receivers and trustees-all of whom are integral parts of the judicial process and are protected by derived judicial immunity. *See Byrd,* 891 S.W.2d at 707; *Delcourt,* 919 S.W.2d at 781–82.

Dallas County concludes its appellate argument by contending that allowing a court reporter the defense of judicial immunity would negate the reporter's liability for inaccurate and unreliable transcriptions of proceedings before the court. However, in addition to the remedy of mandamus, there are other alternatives to

discipline a court reporter and to rectify defects in a reporter's record. When the parties dispute the contents of the reporter's record, rule 34.6(e) of the rules of appellate procedure requires the trial court, after notice and hearing, to order the court reporter to correct any inaccuracies and certify the corrected transcription of the proceedings. The Texas Court of Criminal Appeals has ordered that in the event of a flagrant violation of its order regarding the preparation of the reporter's record, the appellate court may require the court reporter to amend the reporter's record, or prepare a new reporter's record in proper form, at the reporter's expense. *See* TEX.R.APP. P. Appendix "Court of Criminal Appeals Order Directing the Form of the Appellate Record in Criminal Cases." Further, the appellate court may enter any order necessary to ensure the timely filing of the appellate record. TEX. R.APP. P. 35.3(c); *see also In re Ryan*, 993 S.W.2d 294, 298 (Tex.App.—San Antonio 1999, no pet.) (holding reporter in criminal contempt). The court reporter is also subject to discipline by the Court Reporter's Certification Board for failure to properly prepare the reporter's record or to comply with the requirements of the Uniform Format for Texas Court Reporters. *See* TEX. R.APP. P. Appendix "Court of Criminal Appeals Order Directing the Form of the Appellate Record in Criminal Cases."

We conclude an official court reporter functions as an integral part of the court; therefore, Halsey is entitled to summary judgment based on her affirmative defense of judicial immunity. We sustain Halsey's sole point of error.

For the reasons set forth above, we reverse and render judgment for Halsey on her defense of judicial immunity.