**AFFIRMED; Opinion Filed March 2, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01733-CV

**B.W.D., Appellant**

**V.**

**JAMES W. TURNAGE AND FORENSIC DNA & DRUG TESTING SERVICES, INC.,**
**Appellees**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-12-04012-E**

## MEMORANDUM OPINION

Before Justices Myers, Stoddart, and Schenck[1]
Opinion by Justice Myers

Appellant B.W.D. appeals from a summary judgment granted in favor of appellees James

W. Turnage and Forensic DNA and Drug Testing Services, Inc.  In four issues, appellant argues

(1) that appellees were not entitled to derived judicial immunity as a matter of law; (2) they went

beyond the scope of the agreed order that modified the divorce decree; (3) they did not prove

their entitlement to summary judgment as a matter of law; and (4) that the summary judgment

affidavit of James W. Turnage should, in large part, have been struck from the record because of

his lack of qualifications and the conclusory nature of certain statements made in the affidavit.

We affirm.

---

[1] Justice David Schenck succeeded Justice Michael O'Neill, a member of the original panel.  Justice Schenck has reviewed the briefs and record in this case.  *See* TEX. R. APP. P. 41(a).

## BACKGROUND AND PROCEDURAL HISTORY

Appellant sued appellee James W. Turnage and his company, appellee Forensic DNA and Drug Testing Services, Inc., and Medtox Scientific, Inc., for various causes of action including breach of contract, fraud by nondisclosure, negligence, breach of fiduciary duty, and violation of the Texas Deceptive Trade Practices Act. Appellees had been appointed by the trial court to conduct random drug testing on appellant and his former wife in their child custody dispute.

In an agreed order signed on October 13, 2010 that modified the final decree of divorce, the trial court ordered that appellant undergo random supervised weekly urinalysis testing conducted by Forensic DNA and Drug Testing Services beginning the week of October 18, 2010, and continuing until March 31, 2011. The order directed Forensic DNA and Drug Testing to provide copies of all results of appellant's urinalysis testing "contemplated under the terms of this Agreed Order" directly to appellant's attorneys and the former wife's attorney. The order further provided that if appellant:

> fails a urinalysis test or tests positive and such positive result is not satisfactorily explained by [appellant] to the person charged with the responsibility of analyzing the test results, as described below, then the random weekly supervised urinalysis testing shall continue beyond March 31, 2011, until [appellant] has not failed a urinalysis test for a six (6) month period or until further order of the Court.

As for when appellant would be deemed to have "failed a urinalysis test," the order stated:

> IT IS ORDERED that for the purposes of this order, [appellant] shall be deemed to have 'failed a urinalysis test' if any one of the following events occur:
>
> a) the person charged with the responsibility of interpreting the test results determines that a sample given by [appellant] was diluted or altered;
>
> b) the person charged with the responsibility of interpreting the test results determines that [appellant] has 'tested positive' for alcohol or an illegal substance without being provided with a satisfactory explanation (satisfactory to Jim Turnage) and/or documentation such as, by way of example only, a prescription explaining a positive test result; or
>
> c) [appellant] fails to appear for a test and give a sample as directed

–2–

within 5 hours of a request by Jim Turnage of Forensic DNA and Drug Testing Services, Inc. that he submit to a urinalysis test[.]

IT IS ORDERED that if [appellant] fails a urinalysis test then his periods of possession of the child shall immediately be standard possession, as set forth in the Texas Family Code and [appellant's former wife] shall have possession of the child at all other times. In such case, the standard possession shall continue until further order of the court. However, in the event of a violation, nothing in the order shall preclude [appellant's former wife] from filing for additional or further modification with respect to the possession by [appellant] of the child, it being specifically understood that depending on the infraction, additional restrictions on [appellant's] possession of the child might be requested.

During the course of the testing, Turnage determined that certain test results from appellant were "diluted," which can sometimes result when the person being tested is attempting to hide drug use. Turnage signed an affidavit reporting that appellant's August 18, 2010 urine sample was diluted. Medtox Scientific, the laboratory that tested appellant's samples, did not report the August 18th urine sample as diluted. Medtox followed guidelines from the Substance Abuse and Mental Health Services Administration (SAMHSA), U.S. Department of Health and Human Services (HHS), that took into account both the creatinine level (a waste product excreted by the kidneys into the urine) and the specific gravity (relative density) of the urine sample. According to SAMHSA guidelines, the creatinine level must be less than 20 milligrams per deciliter, and the specific gravity less than 1.003, before a urine sample can be considered diluted. *See Mandatory Guidelines for Federal Workplace Drug Testing Programs*, 73 Fed. Reg. 71,881, § 3.7 (Nov. 25, 2008) (stating that an HHS certified laboratory or test facility should report a primary specimen as "dilute" when creatinine concentration is greater than 5 milligrams per deciliter but less than 20, and the specific gravity is equal to or greater than 1.002 but less than 1.003 on a single aliquot). Turnage did not follow the federal guidelines. He relied on a sample's creatinine level (e.g., if it was below 20, he considered it a diluted sample), and he did not take into account the specific gravity of the sample.

Appellant filed this lawsuit in June 2012, alleging that appellees failed to carry out the duties assigned to them and that, because of Turnage's representation regarding the August 18, 2010 urine sample, appellant was forced to agree to weekly random urinalysis for alcohol and drugs, installation of a breathalyzer in his car for one year, and other "onerous terms" in order to maintain the fifty-fifty possession of his daughter. In October 2013, appellees moved for traditional summary judgment, arguing they were entitled to derived judicial immunity from liability for all of the theories pleaded by appellant. The motion was supported, in part, by an affidavit from Jim Turnage, the president of Forensic DNA and Drug Testing Services. Appellant responded to the motion and objected to paragraphs 5, 6, 7, and 8 of the Turnage affidavit.[2] There is no indication the trial court ruled on the objections. Following a hearing held on November 5, 2013, the trial court signed an order November 11, 2013 granting appellees' motion for summary judgment.[3] This appeal followed.

## DISCUSSION

In his first three issues, appellant argues that (1) appellees were not entitled to derived judicial immunity as a matter of law; (2) appellees went beyond the scope of the agreed order in the custody case that appointed them as mere "collectors of urine samples and reporters of results"; and (3) appellees did not prove their entitlement to summary judgment as a matter of law. Because these issues are related, we address them together.

### *Standard of Review*

Our review of a summary judgment is de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When reviewing a summary judgment, we

---

[2] The response was supported, in part, by excerpts from Turnage's deposition.

[3] Four days before the trial court heard appellees' motion for summary judgment, Medtox filed a motion to sever. In a letter to the parties dated November 11, 2013, the same day it signed the order granting summary judgment, the trial court stated that because of its ruling granting appellees' motion for summary judgment, Medtox's motion to sever was moot. Medtox Scientific is not a party to this appeal.

–4–

take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors*, 289 S.W.3d at 848. Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010).

### *Derived Judicial Immunity as to Turnage and Forensic DNA & Drug Testing Services*

Appellees moved for traditional summary judgment on the ground of derived judicial immunity as an affirmative defense to all of appellant's claims. Appellees contend that they functioned as an arm of the court and exercised discretion comparable to a judge when they performed the court-ordered drug testing, and that they did not depart from the scope of the court's appointment. Appellant responds that appellees were not entitled to derived judicial immunity because they exceeded the scope of the order appointing them to perform the drug testing, and they were not acting in a capacity comparable to a judge. Appellant analogizes appellees' role to that of a court reporter preparing a reporter's record, who is typically not entitled to derived judicial immunity. *See Dallas Cnty. v. Halsey*, 87 S.W.3d 552, 557 (Tex. 2002).

"When judges delegate their authority or appoint others to perform services for the court, the judicial immunity that attaches to the judge may follow the delegation or appointment." *Byrd*

*v. Woodruff*, 891 S.W.2d 689, 707 (Tex. App.—Dallas 1994, writ denied). A person entitled to derived judicial immunity receives the same absolute immunity from liability for acts performed within the scope of his jurisdiction as a judge. *Halsey*, 87 S.W.3d at 554. Judicial immunity can attach to certain non-judges because the policy reasons for judicial immunity—protection of individual judges and of the public's interest in an independent judiciary—are also implicated when judges delegate their authority, appoint another to perform services for the court, or allow another to otherwise serve as an officer of the court. *See id.* Under such circumstances, the immunity that attaches to the judge follows the delegation, appointment, or court employment. *Id.* The individual acting in such a capacity therefore enjoys absolute immunity, which is known as derived judicial immunity. *Id.*

Texas uses a functional approach in determining whether a person is entitled to absolute derived judicial immunity. *Halsey*, 87 S.W.3d at 556–57; *Davis v. West*, 317 S.W.3d 301, 307 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Delcourt v. Silverman*, 919 S.W.2d 777, 782 (Tex. App.—Houston [14th Dist.] 1996, writ denied). Under the functional approach, courts determine whether the activities of the person seeking immunity are intimately associated with the judicial process and whether the person exercised discretionary judgment comparable to a judge, as opposed to ministerial or administrative tasks. *Halsey*, 87 S.W.3d at 554, 556; *Davis*, 317 S.W.3d at 307; *Delcourt*, 919 S.W.2d at 782. "The functional approach focuses on the nature of the function performed, not the identity of the actor, and considers whether the conduct is like that of the delegating or appointing judge." *Davis*, 317 S.W.3d at 307 (citing *Halsey*, 87 S.W.3d at 555). In other words, a party is entitled to absolute immunity when the party is acting as an integral part of the judicial system or an "arm of the court." *Delcourt*, 919 S.W.2d at 782. If an action involves personal deliberation, decision or judgment, it is discretionary; actions requiring obedience to orders or the performance of a duty to which the actor has no choice are

ministerial. *Halsey*, 87 S.W.3d at 556. Derived judicial immunity is lost, however, when the court officer acts in the clear absence of all jurisdiction and outside the scope of his authority. *See Clements v. Barnes*, 834 S.W.2d 45, 46 (Tex. 1992) (per curiam).

Derived judicial immunity has been extended to court officers and appointees for acts they are required to do under court order or at a judge's direction. *See Clements*, 834 S.W.2d at 46–47 (court-appointed bankruptcy trustees acting within scope of authority entitled to derived judicial immunity); *Davis*, 317 S.W.3d at 307 (court-appointed receiver acting within the scope of his authority entitled to derived judicial immunity); *Alpert v. Gerstner*, 232 S.W.3d 117, 130-31 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (court-appointed receiver entitled to derived judicial immunity for all acts authorized by court, but not for breach of fiduciary duties); *B.K.*, 116 S.W.3d at 357 (court-appointed psychologists and hospital entitled to derived judicial immunity); *City of Houston v. Swindall*, 960 S.W.2d 413, 417 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("Officers of the court, such as court clerks, law clerks, bailiffs, constables issuing writs, and court-appointed receivers and trustees have been accorded derived judicial immunity because they function as an arm of the court."); *Delcourt*, 919 S.W.2d at 781–83 (psychiatrist appointed by court to evaluate members of a family was entitled to derived judicial immunity); *Ramirez v. Burnside & Rishebarger, L.L.C.*, No. 04–04–00160–CV, 2005 WL 1812595, at *2 (Tex. App.—San Antonio Aug. 3, 2005, no pet.) (mem. op.) (court-appointed receiver entitled to derived judicial immunity for claims she falsely represented condition of a house purchased from the receivership estate); *see also Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) (court-appointed counselor who performed psychological testing in a divorce dispute judicially immune); *but see Halsey*, 87 S.W.3d at 557 (court reporters do not engage in discretionary function or exercise judgment comparable to that of a judge when preparing reporter's record for a party, and are not entitled to derived judicial immunity for that function).

Appellant maintains that appellees were simply ordered to collect samples and perform the testing, and that the actual drug testing was done by Medtox, which then reported the results to appellees. Appellant argues that Turnage "then took it upon himself, ignoring Medtox's reports, to determine whether a test was diluted or not, using improper standards," and that the trial court's order did not direct appellees to interpret test results, merely to "conduct" the test, which appellees did not do. Appellees contend that these arguments were waived because they do not comport with arguments made to the trial court.

Assuming, without deciding, that appellant's arguments were preserved for appellate review, the order provided that in the event appellant "fails a urinalysis test or tests positive and such positive result is not satisfactorily explained by [appellant] *to the person charged with the responsibility of analyzing the test results*, as described below, then the random weekly supervised urinalysis testing shall continue beyond March 31, 2011 . . . ." (emphasis added)." The order further provided that, for purposes of the order, appellant would be deemed to have "failed a urinalysis test" if "*the person charged with the responsibility of interpreting the test results*" determined that a sample given by appellant was diluted or altered, or if that person determined appellant had "'tested positive' for alcohol or an illegal substance without being provided with a satisfactory explanation (*satisfactory to Jim Turnage*) and/or documentation such as, by way of example only, a prescription explaining a positive test result," or if appellant failed "to appear for a given test and give a sample as directed within 5 hours of a request by Jim Turnage of Forensic DNA and Drug Testing Services, Inc. that he submit to a urinalysis test (emphasis added)."

The order, however, did not specify the method or methods by which "the person charged with the responsibility of interpreting the test results" would determine that a sample was diluted or altered. There was no mention of SAMHSA guidelines or the comparable guidelines from the

U.S. Department of Transportation—no mention of creatinine levels or the specific gravity of samples. *See* 49 C.F.R. § 40.93(a) (stating that a laboratory must consider the primary specimen to be "dilute" when the creatinine concentration is greater than or equal to 2 milligrams per deciliter but less than 20 milligrams per deciliter, and the specific gravity is greater than 1.0010 but less than 1.0030 on a single aliquot). The order also did not specify where or how it would be determined appellant had "tested positive" for alcohol or an illegal substance. These matters were left to the discretionary judgment of "the person charged with the responsibility of interpreting the test results." The order did not identify that person, but it stated that Jim Turnage, the president of Forensic DNA and Drug Testing Services, not Medtox, which is not mentioned anywhere in the order, must be given the satisfactory explanation for a positive test result for alcohol or an illegal substance. Therefore, according to the plain language of the order, appellees were acting as an "arm of the court" when they conducted the court-ordered drug testing, and they did not exceed the order's scope by interpreting the drug testing results.

Appellant also argues that appellees failed to report to appellant's counsel in the custody case a positive test result for marijuana for appellant's former wife from a drug test she took on June 21, 2011. Appellant further contends that the order required appellees to report all such failed tests to appellant's attorneys and that, in his January 2012 deposition, Turnage agreed the test should have been reported. According to the order, appellant's former wife was required to undergo random supervised urinalysis seven times during a twelve-month period beginning September 30, 2010. The order directed Forensic DNA and Drug Testing Services to provide copies of all results of appellant's former wife's urinalysis testing "contemplated under the terms of this Agreed Order" directly to the former wife's attorney and to appellant's attorney. In the deposition excerpts cited by appellant, Turnage explained that the June 21, 2011 test, which was originally supposed to be a random drug test, was not reported because the former wife asked

that it be changed to a "private test," and that she paid for the test herself. Turnage wished the test had remained random and been reported to all the parties. But he did not concede that the reporting of the June 21 test was compulsory, and appellant has not cited any other summary judgment evidence to support his argument that withholding the drug testing result was beyond the scope of the order.

Additionally, as other courts have pointed out, derived judicial immunity provides broad protection:

> [O]nce an individual is cloaked with derived judicial immunity because of a particular function being performed for a court, every action taken with regard to that function—whether good or bad, honest or dishonest, well-intentioned or not —is immune from suit. . . . Once applied to the function, the cloak of immunity covers all acts, both good and bad. . . . The whole either is protected or it is not.

*B.K. v. Cox*, 116 S.W.3d 351, 357 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citations omitted); *Rehabworks, LLC v. Flanagan*, No. 03–07–00552–CV, 2009 WL 483207, at \*2 n. 5 (Tex. App.—Austin Feb. 26, 2009, pet. denied) (mem. op.); *Ramirez*, 2005 WL 1812595, at \*2. Such is also the case here. Unlike the court reporter in *Halsey*, which is cited by appellant, appellees did not perform ministerial or administrative tasks. Appellees, in other words, did not just prepare "an exact copy of the proceedings," *see Halsey*, 87 S.W.3d at 557, but were, as specified in the order, tasked with responsibilities that necessitated the use of the kind of deliberation, decision, and judgment that is akin to judicial decision-making. Under *Halsey's* functional approach, appellees were therefore entitled to summary judgment as a matter of law based on their affirmative defense of derived judicial immunity. *See id.* at 554; *Delcourt*, 919 S.W.2d at 782. We overrule appellant's first three issues.[4]

---

[4] Because we conclude that the trial court correctly granted summary judgment on the ground that appellees were immune from liability as a matter of law, we need not reach appellant's fourth issue, which concerns whether paragraphs 5, 6, 7, and 8 of the affidavit of Jim Turnage should have been struck from the record because of his alleged lack of qualifications and the conclusory nature of certain statements made in the affidavit.

The trial court's judgment is affirmed.

131733F.P05

/Lana Myers/
LANA MYERS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

B.W.D., Appellant

No. 05-13-01733-CV    V.

JAMES W. TURNAGE AND FORENSIC
DNA & DRUG TESTING SERVICES,
INC., Appellees

On Appeal from the County Court at Law
No. 5, Dallas County, Texas
Trial Court Cause No. CC-12-04012-E.
Opinion delivered by Justice Myers. Justices
Stoddart and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. It is **ORDERED** that appellees JAMES W. TURNAGE AND FORENSIC DNA & DRUG TESTING SERVICES, INC. recover their costs of this appeal from appellant B.W.D.

Judgment entered this 2nd day of March, 2015.