**B.K., Individually and as Next Friend of T.K., C.K., P.K., and N.K., Minors, Appellant,**

v.

**Lynn Jacob COX, Independent Executrix of the Estate of Michael Dennis Cox, Deceased, and Baylor College Of Medicine, Appellees.**

No. 14–02–00591–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 28, 2003.

---

Parker Bond Binion, Houston, for appellants.

Joy M. Soloway, Nancy Locke, Randall Shirres Richardson, Houston, Walter P. Mahoney, Jr., Pasadena, for appellees.

Panel consists of Justices YATES, HUDSON, and FOWLER.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant Barbara K., individually and as next friend of T.K., C.K., P.K., and N.K., filed this negligence suit against the independent executrix of the estate of Michael Dennis Cox and Baylor College of Medicine [1] based on their alleged failure to report suspected child abuse of her children that they allegedly discovered while performing psychological examinations ordered by a Harris County district court. The trial court granted appellees' motion for summary judgment based on derived judicial immunity. Although the claims Barbara raises are slightly different from those raised in *Delcourt*, we affirm because the case is controlled by the absolute immunity doctrine we discussed in *Delcourt*.[2] This doctrine includes both judicial immunity and derived judicial immunity.[3]

---

1. They were not the only defendants, but they are the only defendants relevant to this appeal.

2. *See Delcourt v. Silverman*, 919 S.W.2d 777, 781–83 (Tex. App.-Houston [14th Dist.] 1996, writ denied).

3. *See Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex.2002).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Barbara filed for divorce from her husband, Larry. The case was assigned to the 257th District Court. Initially Larry was allowed unsupervised visits with his children; however, at some point Barbara petitioned the court to suspend Larry's unsupervised contact with the children because she was concerned about possible sexual misconduct by Larry. In response to Barbara's concerns, the judge ordered Dr. Michael Cox of the Baylor College of Medicine to perform psychological evaluations and examinations of Barbara and Larry and their children. The court's order stated that Cox and Baylor were to act as an extension of the court in performing these evaluations and examinations:

> It is ORDERED that Dr. Michael Cox, Baylor Pilot Program, Baylor College of Medicine, [sic] Department of Psychiatry, 1 Baylor Plaza, Houston, [sic] Texas 77030 ... is appointed as an extension of the Court as the evaluating psychologist for evaluation and examination of Larry ... Barbara ... and the children the subject of this suit....

> ...

> It is ORDERED that all written reports prepared by Dr. Michael Cox setting out his findings, including results from all tests made, if any, diagnosis, conclusions and observations shall be submitted directly to the Court.

In an affidavit the judge of the 257th District Court filed in connection with this lawsuit, the judge testified as follows: (1) Baylor College of Medicine created the Baylor Pilot Program in cooperation with the Court to provide "lower-cost mental health evaluations"; (2) the Court and the Baylor Pilot Program intended to have Ph.D psychology interns at Baylor College of Medicine perform evaluations with Dr. Cox's oversight, with Dr. Cox and these interns functioning as an arm of the Court

and under the Court's order; (3) the Court appointed Dr. Cox and the Baylor Pilot Program to assist it in investigating, evaluating, and assessing the mental and emotional condition, including allegations of sexual abuse, of this family; and (4) Dr. Cox and the employees, agents, or servants of Baylor College of Medicine involved in the evaluation of the family did so to assist the Court in the integral judicial process of investigating, evaluating, and assessing the family members' mental and emotional condition.

Dr. Cox assigned intern Suman Rao to help him evaluate Barbara, Larry, and the children. In the summer of 1998, Rao interviewed all members of the family. During these interviews, two of the children told Rao about events which led her to believe that Larry was behaving inappropriately with the children. Rao prepared a report to the judge recommending that Larry have no visits with T.K. and only supervised visitation with the other three children. However, Rao left Baylor suddenly, and the draft report was never sent to the court.

About eight months later, in March of 1999, Barbara notified Dr. Cox that at least two of her children had made outcries that Larry had sexually assaulted them. After interviewing the children, Dr. Cox made his first report to Children's Protective Services ("CPS") and told the court about the situation, recommending that Larry be ordered not to see the children until the matter was investigated. The court followed the recommendation, ordering Larry not to see the children. CPS investigated the reports and concluded that there was reason to believe that the sexual abuse had occurred.

Because of the long delay between the time Rao first became aware of Larry's inappropriate behavior and the time that Barbara informed the experts that Larry

was abusing their children, Barbara sued the independent executrix of Dr. Cox's estate ("Cox Estate"), Baylor College of Medicine, Suman Rao, and Larry. She alleged that Dr. Cox and Baylor were negligent because they did not report Larry's suspected child abuse to CPS.[4] Barbara alleged that Rao told Dr. Cox in the summer of 1998 convincing evidence existed that Larry had committed various acts of sexual abuse against the children. Barbara alleged that Dr. Cox ordered Rao to call CPS, but that Rao left Baylor College of Medicine without contacting CPS. Barbara alleged that these acts by Cox and Baylor caused the children to continue to be subjected to their father's sexual abuse from the summer of 1998 through March of 1999. In her petition, she did not assert that the defendants knowingly failed to report any suspected child abuse, and she did not allege they violated any criminal statute.

The Cox Estate and Baylor moved for summary judgment, alleging that they were entitled to absolute immunity from suit because the conduct in issue occurred while they were functioning as an arm of the court. The trial court granted this motion and entered a final judgment.

## II. Issues Presented for Review

On appeal, Barbara asserts the following issues for review:

(1) Did the trial court err in granting summary judgment based on judicial immunity?

(2) Is the failure to report suspected child abuse a judicial act?

(3) Is the statutory duty to report suspected child abuse mandatory or discretionary?

(4) If mandatory, are appellees entitled to judicial immunity as a matter of law such that they are exempt from their mandatory statutory and professional duties to report suspected child abuse?

(5) If discretionary, does a fact issue exist as to whether appellees acted reasonably and in good faith so as to defeat summary judgment?

(6) Does judicial immunity extend to criminal acts and omissions?

(7) Does the existence of statutory immunity (which does not apply to the failure to report suspected child abuse) preclude the application of judicial immunity?

## III. Standard of Review

The trial court granted summary judgment based on the affirmative defense of derived judicial immunity. The summary judgment was proper only if the movants conclusively established each element of this defense. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). In reviewing this summary judgment, we take as true all evidence favorable to Barbara and indulge every reasonable inference in her favor. *Id.*

## IV. Analysis

**A. Did the trial court err in granting summary judgment based on derived judicial immunity?**

**1. Rao, Baylor, and Cox were entitled to derived judicial immunity.**

■■■ Barbara's first issue is that Rao, Baylor, and Cox were not entitled to derived judicial immunity. She recognizes the significance of the court appointing

**4.** Barbara alleged that this failure to act violated sections 33.008 and 261.101 of the Tex-

as Family Code.

Cox and Baylor and recognizes that at least some of what they did was "intimately associated with the judicial process." Thus, Barbara acknowledges that Texas protects non-judges who have been appointed by a court as an arm of the court when (1) their function is intimately associated with the judicial process, and (2) they exercise discretionary judgment like a judge. *See Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex.2002). This approach to immunity is called the functional approach. *See id.; Delcourt v. Silverman*, 919 S.W.2d 777, 781–83 (Tex.App.-Houston [14th Dist.] 1996, writ denied). But Barbara claims Cox and Baylor are not protected—even though appointed by the court to function as an arm of the court—because they strayed from their judicial function when they failed to report suspected child abuse.[5] This argument reveals a fundamental misunderstanding of the functional approach to absolute immunity.

 Generally, once an individual is cloaked with derived judicial immunity because of a particular function being performed for a court, every action taken with regard to that function—whether good or bad, honest or dishonest, well-intentioned or not—is immune from suit. *Halsey*, 87 S.W.3d at 554. Once applied to the function, the cloak of immunity covers all acts, both good and bad. *See id.* at 555 (stating that "as applied in Texas, the functional approach in applying derived judicial immunity focuses on the nature of the function performed, not the identity of the actor, and considers whether the court officer's conduct is like that of the delegating or appointing judge"). The whole either is

protected or it is not. *See id.* at 554–55. So, here, if Cox and Baylor were entitled to derived judicial immunity for any part of their psychological evaluations, they were entitled to it for all parts.

We have already held that a psychiatrist appointed to evaluate members of a family was entitled to derived judicial immunity. *See Delcourt*, 919 S.W.2d at 781–83. We concluded this for the following reason:

> When a court appoints a mental health professional to examine the child and the parents in a custody proceeding, the professional is acting as a fact finder for the court. The court relies on the professional to provide information essential to the decision-making process. Without the protection of absolute immunity, such professionals would be, at the very least, reluctant to accept these appointments. This would in turn inhibit judges from performing their duties.

*Id.* at 783. In fact, *Delcourt* involved the very same judge and a similar order to the one we have in this case. *See id.* at 779, 781–83.

In *Delcourt*, to determine whether the court-appointed psychiatrist was entitled to immunity, we looked to affidavit testimony from the appointing judge and affidavit testimony from the psychiatrist. Here, we have the same type of testimony.[6] The trial judge testified by affidavit that "Dr. Cox, Dr. Rao, and the employees, agents, or servants of Baylor College of Medicine who aided them in their evaluation of [the family] did so for the purpose of assisting the Court in the integral judicial process of investigating, evaluating,

---

**5.** Barbara separates her argument into two parts, first that their failure to report was not a judicial act and second that Cox and Baylor do not receive immunity simply because they are "court appointed." We answer both of these claims in our discussion below.

**6.** We have no affidavit from Dr. Cox because he died between the time of the events in this case and the lawsuit.

and assessing the [family members'] mental and emotional condition pursuant to the Court's order." In short, Dr. Cox, Dr. Rao, and their colleagues were to help the trial judge perform a judicial function of evaluating this family in an effort to determine custody issues. The only other question to ask in determining if immunity attaches was if Rao, Cox, and Baylor were acting within the scope of this appointment when they allegedly neglected to report suspected child abuse. Rao's affidavit establishes that they were within the scope of the order because their acts—whether negligent or not—related to the family's evaluation. *See Delcourt*, 919 S.W.2d at 783. Barbara did not controvert this evidence in the trial court. Therefore, the trial court did not err in holding that the Cox Estate and Baylor were immune from suit.

Thus, the Cox Estate's and Baylor's summary-judgment evidence conclusively proved that they were entitled to absolute immunity. We overrule issues one, two, and five.

**2. Possible violation of statutes imposing criminal liability does not negate derived judicial immunity in a suit by a private citizen.**

■ In spite of this evidence of immunity, Barbara claims that the doctrine of judicial immunity did not shield the Cox Estate and Baylor from suit because (1) Cox and Rao violated statutory duties—which impose criminal liability—by not reporting suspected child abuse, (2) the duty to report suspected child abuse is mandatory and not discretionary, and (3) the statutory immunity given in section 261.106 of the Texas Family Code overrides judicial immunity. As with her earlier assault on the doctrine of judicial immunity, these arguments misinterpret and misapply the doctrine.

Barbara's first issue, whether judicial immunity continues to protect court-appointed psychiatrists when they have violated a statute imposing criminal liability for a failure to act, is flawed because she applies a general rule—no judicial immunity from criminal liability—to a specific situation to which it does not apply—a suit brought by a private citizen.

The broadest rule that controls our decision was announced in *Pruitt v. Turner* in a dissenting opinion approved by the Texas Supreme Court. *See Pruitt v. Turner*, 336 S.W.2d 440, 444 (Tex.Civ.App.-Waco 1960) (Wilson, J., dissenting), *rev'd* 161 Tex. 532, 342 S.W.2d 422 (1961) (approving Justice Wilson's dissenting opinion). There, the dissent announced the guiding rule:

> It was a settled principle at the very foundation of well-ordered jurisprudence that every judge, whether of a higher or lower court, *in the exercise of the jurisdiction,* conferred on him by law, had the right to decide according to his own free and unembarrassed convictions, uninfluenced by any apprehension of private prosecution.

*Pruitt*, 336 S.W.2d at 444 (Wilson, J., dissenting) (underlining added).

■ For this case, the key point in this quote is that the judge is free from *private* prosecution. Therefore, in *Pruitt*, a litigant could not sue the judge for failing to empanel a jury in a case. *See Turner v. Pruitt*, 161 Tex. 532, 342 S.W.2d 422, 423 (1961). That is a mandamusable act, not subject to private suit. *See id.* This same concept adheres when criminal acts are alleged. So, a judge accused of conspiring with others to issue an injunction in violation of a plaintiff's civil rights cannot be sued in a civil rights action; however, the private individuals who allegedly conspired with the judge—and who were not engaged in a judicial function and

merely acted as private citizens—could be sued in a civil rights action by the individuals. *See Dennis v. Sparks,* 449 U.S. 24, 26–29, 101 S.Ct. 183, 185–87, 66 L.Ed.2d 185 (1980). The judge, though immune from private suit, is not immune from criminal prosecution by a state or federal agency. *See Dennis,* 449 U.S. at 27–31, 101 S.Ct. at 186–88. Applying the rule here, the trial judge below—and the court-appointed psychiatrists who proved that they were functioning as an arm of the court—are immune from private prosecution by a private citizen. However, if they violated a criminal law, they are not immune from criminal prosecution by the government.

 Some cases using the functional approach have held that certain administrative functions of judges are not part of the judicial function and therefore are outside the scope of judicial immunity. *See, e.g., Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (holding judge not able to invoke judicial immunity in § 1983 damages action against him for employment decision made in the exercise of his administrative functions). However, the case before us today does not involve nonjudicial, administrative functions, and cases such as *Forrester* only reinforce the principle that judges or those whom they appoint are entitled to absolute immunity for alleged acts and omissions during the performance of functions intimately associated with the judicial process. *See id.,* 484 U.S. at 224–26, 108 S.Ct. at 542–43.

Common law derived immunity might be unavailable if a statute provided Barbara with a statutory claim for damages against the Cox Estate and Baylor. We have not

found—and Barbara has not cited us to—any authority holding that section 261.101of the Texas Family Code or any other statute provides Barbara with a statutory damage claim against the Cox Estate and Baylor on the facts of this case. In short, even if Cox and Baylor violated sections 33.008 and 261.101 of the Texas Family Code, Barbara has not shown that these statutes override the common law immunity to which Cox and Baylor have shown themselves to be entitled.

**3. Possible violation of a mandatory duty does not negate derived judicial immunity.**

 We now turn to the second reason Barbara claims immunity does not shield the Cox Estate and Baylor—the duty to report suspected child abuse is mandatory, not discretionary. In support of this claim, Barbara cites numerous "official immunity" cases. Official immunity cases do not apply to judicial immunity; judicial immunity and official immunity are two completely different doctrines.

 Judicial immunity lends immunity for acts taken in a case before a court.[7] Judicial immunity is an absolute immunity from private action for all acts—good or bad—in a case. It applies to judges and those appointed by judges to perform judicial, discretionary functions. For those appointed by a court to assist it, immunity attaches only if they are performing judicial, discretionary tasks.

 Official immunity applies to government officials. Official immunity is not absolute; the actor must act in good faith, and the act must be discretionary.[8]

7. Typically it is described as immunity in cases over which the court has jurisdiction. But, if a case was filed in a court, even if the court ultimately decided it had no jurisdiction over a case, judicial immunity would protect

the judge's actions before the case was dismissed.

8. Obviously, a judge qualifies as a governmental official, but judges need not resort to offi-

Courts also use different analyses to determine if the judge or government official is immune from suit. As we explained earlier, when judicial immunity is claimed, Texas courts use the functional approach to decide if immunity attaches. That approach looks to the task the individual is assigned by the court. If the task is intimately involved with the judicial process and involves judicial decision-making and discretion, immunity attaches. We do not parse the individual acts—interviewing the individuals, deciding that an issue of abuse exists and allegedly failing to report suspected abuse—within the general assignment and scrutinize them for proper behavior. Any general assignment or function intimately related to the judicial process is protected; any part of the general assignment, or function, that is part and parcel of the function is protected. We do not inquire about reasonableness; we do not inquire about good faith. We do not ask whether the alleged wrongful conduct was discretionary. *See Forrester,* 484 U.S. at 224, 108 S.Ct. at 542 (stating that "under [the functional] approach, we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions"); *Halsey,* 87 S.W.3d at 555 (stating that "as applied in Texas, the functional approach in applying derived judicial immunity focuses on the nature of the function performed, not the identity of the actor, and considers whether the court officer's conduct is like that of the delegating or appointing judge"); *Delcourt,* 919 S.W.2d at 782 ("[u]nder the functional approach, courts determine whether the activities of the party seeking immunity are intimately associated with

the judicial process ... [i]n other words, a party is entitled to absolute immunity when the party is acting as an integral part of the judicial system or an 'arm of the court'"). As we said before, once an individual is cloaked with derived judicial immunity because of a function being performed for a court, all the actions intimately connected with that process—whether good or bad, honest or dishonest, well-intentioned or not, criminal or not—are cloaked with immunity.

The inquiry in official immunity cases is quite different. There the focus is not the actor's general function, but the specific act in question. It delves into the specific act at issue and asks if it was discretionary. It looks at the alleged wrongful conduct and asks if the actor was well-intentioned and acted in good faith. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994).

Although at some point in the inquiry both types of immunity ask if the act (for official immunity) or function (for judicial immunity) was discretionary, or involved discretion, the similarity stops there. Thus, official immunity cases do not apply to a judicial immunity case because they employ the wrong analysis. Therefore, we overrule issues three, four, and six, all based on an assumption that official immunity cases apply to derived judicial immunity.

**B. Does the statutory immunity under section 261.106 of the Texas Family Code override the common-law derived judicial immunity?**

In her seventh issue Barbara argues that the existence of statutory immunity under section 261.106 of the Texas Family Code shows that the Legislature intended to abolish common-law derived

cial immunity because judicial immunity is

broader.

judicial immunity and replace it with this statutory immunity. *See* TEX. FAM. CODE § 261.106. We disagree. Section 261.106 grants immunity from civil or criminal liability to a person acting in good faith who reports or assists in the investigation of a report of alleged child abuse or neglect or who testifies or otherwise participates in a judicial proceeding arising from a report, petition, or investigation of alleged child abuse or neglect. TEX. FAM. CODE § 261.106(a). This statutory immunity also extends to an authorized volunteer of the Department of Protective and Regulatory Services or a law enforcement officer who participates at the request of that department in an investigation of alleged or suspected child abuse or neglect or in an action arising from an investigation if the person was acting in good faith and in the scope of the person's responsibilities. TEX. FAM. CODE § 261.106(b).

In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See id.*

Barbara cites no authorities directly on point. She does cite a Texas Supreme Court case in which the court held that the Medical Liability and Insurance Improvement Act intended to abolish the common-law discovery rule regarding the claims to which it applies. *See Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985). We find that the language of section 261.106 of the Texas Family Code unambiguously provides statutory immunity for certain persons who assist in the investigation of a report of alleged child abuse or neglect or who participate in a judicial proceeding arising from a report, petition or investigation of child abuse; however, we find no intent in the unambiguous language of this statute to abolish common-law derived judicial immunity. *See* TEX. FAM. CODE § 261.106. We conclude that the statutory privilege granted by section 261.106 serves a different purpose than derived judicial immunity and that the Legislature, by enacting this statute, did not intend to abolish derived judicial immunity. *See Laub v. Pesikoff,* 979 S.W.2d 686, 690 n. 2. (Tex. App.-Houston [1st Dist.] 1998, pet. denied) (holding that section 261.106 of the Texas Family Code does not abolish or modify the absolute, common-law, judicial-communications privilege because the statute serves different purposes). Accordingly, we overrule Barbara's seventh issue.

## V. CONCLUSION

The Cox Estate and Baylor conclusively proved facts showing their entitlement to derived judicial immunity under Texas common law, and Barbara did not raise a genuine issue regarding any of the facts material to this defense. The focus of our derived-judicial-immunity analysis is on the nature of the function performed by Dr. Cox and Baylor, not on the alleged criminality of a specific act or omission allegedly committed while performing that function. The existence of a duty to report suspected child abuse under section 261.101(b) of the Texas Family Code and criminal sanctions for the knowing violation of this duty do not prevent Dr. Cox and Baylor from asserting derived judicial-

immunity from civil liability in this case. We conclude that the statutory immunity provided by section 261.106 does not abolish common-law derived judicial immunity. Under the functional approach, we hold that the trial court correctly granted summary judgment based on derived judicial immunity. *See Halsey,* 87 S.W.3d at 554–57; *Delcourt,* 919 S.W.2d at 781–83. Accordingly, we overrule Barbara's first global issue challenging this judgment and all sub-issues.