

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00254-CV

DEBORAH LOGSDON                                         APPELLANT

V.

KERRY OWENS                                              APPELLEE

----------

## FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 096-279970-15

----------

## MEMORANDUM OPINION[1]

----------

Appellant Deborah Logsdon appeals from the trial court's summary judgment in favor of Appellee Kerry Owens, the court-appointed receiver in Logsdon's divorce. Because we hold that the trial court properly granted summary judgment on the ground that Owens has derived judicial immunity, we affirm the trial court's judgment.

---

[1]See Tex. R. App. P. 47.4.

**Background Facts**

In early 2012, Deborah filed for divorce from her husband Mark Logsdon (Mark) after almost twenty-eight years of marriage.[2]  During the marriage, the couple started and ran Champion Sweeping Company, which performed parking lot, property, and building maintenance.[3]  In July 2012, the family court signed an agreed order appointing Owens as receiver "to preserve and immediately protect all of the property of the parties."  The order authorized Owens to do "any and all acts necessary to effect the proper administration and lawful conduct of th[e] receivership, including . . . any other acts in regard to the aforesaid property (real and personal) as ordered herein by this Court."  The final divorce decree ordered Owens to sell "Champion Sweeping and all assets, equipment, tools, implements and related items . . . under terms and conditions determined by . . . Owens."  The net sales proceeds were to be distributed 25% to Deborah and 75% to Mark.

On appeal, this court modified the divorce decree to delete an award of attorney's fees to Mark for defending against Deborah's tort claims.[4]  We affirmed the decree as modified, upholding the family court's finding that Deborah had committed actual fraud on the community and stating in our opinion that in the month after Mark admitted having an affair, Deborah "began depleting the

---

[2]*Logsdon v. Logsdon*, No. 02-14-00045-CV, 2015 WL 7690034, at *1 (Tex. App.—Fort Worth Nov. 25, 2015, no pet.).

[3]*Id.*

[4]*Id.* at *1, *12–13.

Champion Sweeping account; she wrote backdated checks, cashed them, and transferred the money into accounts in her name and in [her s]on's name."[5]

Owens sold off the company's assets by auction instead of selling Champion Sweeping as a going concern. Owens sold the tangible assets of Champion Sweeping for a total of $374,763.18. His office staff provided both parties the results of the auction, with a list of the items sold and a description of how the proceeds were to be distributed, both by line item and in toto. Champion Sweeping's business name, goodwill, and customer lists were not sold.

Before the auction of Champion Sweeping's assets, Mark formed a new sweeping company. Mark purchased some Champion Sweeping assets at the auction for use in his new business. Mark also kept the same cell phone and phone number that had been acquired for Champion Sweeping for his new business.

At the hearing on Owens's motion to distribute the auction proceeds, Deborah did not complain that the Champion Sweeping name, goodwill, or customer list had not been sold, nor did she complain that Owens had failed to keep her informed. At the end of the hearing, the family court granted Owens's motion and found that he had performed his duties as receiver regarding the auction of Champion Sweeping.

---

[5]*Id.* at *1, *2, *5–7.

Deborah sued Owens and Mark. She claimed that Owens's failure to sell the business as a whole allowed Mark to use all the equipment and intangible assets from Champion Sweeping for the benefit of his new business. She sued Owens for breach of fiduciary duty, fraud, negligence, and gross negligence. Against Mark, she asserted claims of fraud, negligence, and gross negligence.

At a deposition, Owens, who at least at the time of the filing of his motion for summary judgment was still the receiver concerning those "assets, financial accounts, real and personal property and other issues" that had been placed "under his authority," admitted that he had "always felt that [the business] would [have] more value if it could be sold in its entirety." He testified that he believed that the business had been valued at between $500,000 and $600,000, if not more. He also testified that he did not market the business as a whole because he was not asked to market it, he could not get a noncompetition agreement from both Mark and Deborah when one broker showed interest, and Mark had told him that requiring a noncompetition agreement "was traditional in their business." Owens admitted that he never calculated the component parts of goodwill. He explained that he believed that Champion Sweeping lost goodwill of any value when the trial court ordered it liquidated because it was awarded to neither party and neither spouse would sign a noncompetition clause. While he recognized that a customer list is a proprietary asset of a business, Owens also testified that the Champion Sweeping customer list had very little value because "[t]he clients would come and go." He clarified that he did not auction the list off because it

4

had no value. He later reiterated that he did not auction off the goodwill, the company name, and the business customer list "[b]ecause they had no value. No one would buy them." He based this conclusion at least in part on his conversations with Brian Rice, the accountant retained to value the business.

Owens filed a traditional motion for summary judgment on three grounds: (1) he was immune from all claims and causes of action because of derived judicial immunity, (2) Deborah suffered no harm from his actions, and (3) she could not have justifiably relied upon any of his representations. The trial court granted the motion without specifying the grounds. Owens filed a motion to sever, the trial court severed Deborah's claims against Owens into the underlying cause, and Deborah timely appealed.

**Standard of Review**

We review a summary judgment de novo.[6] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[7] We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[8] A defendant is entitled to summary judgment on an affirmative defense if the

[6] *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[7] *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[8] *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

defendant conclusively proves all the elements of the affirmative defense.[9]  To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense.[10]

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious.[11]

**Derived Judicial Immunity**

In her first issue, Deborah contends that Owens acted outside the scope of his authority as receiver in the divorce and that he therefore does not have derived judicial immunity.  As this court has explained in a case on point,

> When entitled to derived judicial immunity, a person appointed to perform services for the court receives the same absolute immunity from liability as a judge acting in his or her official capacity.  Judicial immunity can attach to certain nonjudges because the policy reasons for judicial immunity—protection of individual judges and of the public's interest in an independent judiciary are also implicated when judges delegate their authority, appoint another to perform services for the court, or allow another to otherwise serve as an officer of the court.  In those circumstances, the immunity attaching to the judge follows the delegation, appointment, or court employment.  The person acting in such a capacity thus also enjoys absolute immunity, which is known as derived judicial immunity.

---

[9]*Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010), *cert. denied*, 562 U.S. 1180 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

[10]*See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

[11]*Provident Life and Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

Texas employs a "functional approach" to determine whether someone is entitled to derived judicial immunity. This approach "looks to whether the person seeking immunity is intimately associated with the judicial process" and whether "that person exercises discretionary judgment comparable to that of the judge." The functional approach looks to the nature of the function performed, not the identity of the actor, and considers whether the court officer's conduct is like that of the delegating or appointing judge.[12]

Further, when a function is entitled to derived judicial immunity, that absolute immunity covers "every action taken with regard to that function—whether good or bad, honest or dishonest, well-intentioned or not."[13] Thus, the negligence and bad-faith exceptions Deborah relies on from dated caselaw do not exist under the current functional approach.[14]

---

[12]*Conner v. Guemez*, No. 02-10-00211-CV, 2010 WL 4812991, at *3 (Tex. App.—Fort Worth Nov. 24, 2010, no pet.) (mem. op.) (citations omitted).

[13]*B.K. v. Cox*, 116 S.W.3d 351, 357 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

[14]*Compare Dillingham v. Putnam*, 109 Tex. 1, 5, 14 S.W. 303, 305 (1890) ("[A]s a defendant, a receiver is not personally liable even for costs. In case a judgment is rendered against him, unless in cases in which his own wrong created the liability, he is not liable personally[.]"), *and Best & Russell Cigar Co. v. William Reese Co.*, 210 S.W. 317, 318 (Tex. Civ. App.—Fort Worth 1919, no writ) ("The sole liability of the receivers, except in cases in which they are personally at fault (and nothing of that character is alleged in this suit) is official; and when their official career ceases, and when the property delivered to them as receivers has passed from their hands under orders of the court that appointed them, and they have been by that court discharged from their trust, then no judgment can be rendered against them."), *and Harrison v. Coutret*, 157 S.W.2d 454, 456 (Tex. Civ. App.—San Antonio 1941, writ ref'd w.o.m.) ("[H]aving acted within the authority given him in the order appointing him, he is not responsible for any loss which may have accrued, unless he acted in bad faith or failed to use ordinary care and discretion in the management of the business."), *with Dallas Cty. v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002) ("When entitled to the

Deborah's reliance on *Alpert v. Gerstner*[15] is likewise misplaced. Citing *Alpert*, she argues that Owens was acting not as an arm of the court but as a representative of Mark and her when he was ordered to sell Champion Sweeping and that she was a beneficiary of Champion Sweeping's liquidation. But as this court explained in *Conner*, a case involving a divorced husband suing a receiver for breach of fiduciary duty,

> In *Alpert*, the court had appointed Gerstner as a receiver for the plaintiffs' trusts and granted him "the same powers and duties as a trustee." The *Alpert* plaintiffs argued that Gerstner should not be immune from various acts because they were not normal judicial functions. The court determined that Gerstner was entitled to judicial immunity for some acts and not for others. That is, Gerstner was entitled to immunity "to the extent that she was authorized, as a receiver of the property in the Trusts, to take charge and keep possession of the Trust property." But as to her actions regarding investing and managing the stock portfolios, "Gerstner was acting as a representative of the interests of the beneficiaries and not as an agent of the Court." The court went on to cite a number of cases, all discussing the fiduciary duty that arises out of a trustee relationship—not, it is worth noting, arising out of a receivership.
>
> One of the cases *Alpert* cites and distinguishes is *Ramirez v. Burnside & Rishebarger, L.L.C.* In *Ramirez*, the plaintiff complained that the receiver falsely represented the condition of a house the plaintiff purchased from the estate. The court held that the language of the order, which allowed the receiver to "sell, negotiate, transfer or redeem any . . . real property" of the estate, was a broad grant of power and the receiver was immune for all acts associated with that duty, including "mak[ing] false promises to third parties concerning

---

protection of derived judicial immunity, an officer of the court receives the same immunity as a judge acting in his or her official judicial capacity—absolute immunity from liability for judicial acts performed within the scope of jurisdiction.").

[15]232 S.W.3d 117 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

8

the property." The language of the order granting Mr. Conner his powers of receiver much more closely resembles that of the *Ramirez* order than that of the *Alpert* order.

In *Alpert,* the fiduciary duty owed by the receiver to the beneficiaries was not created by her appointment as receiver, but through the grant of power as trustee. Here, the complained-of actions and omissions all fall squarely under the authority delegated to Mr. Conner by the order appointing him receiver. The sale of the stores was also approved by the court in a later order, providing further evidence that Mr. Conner's role was as an arm of the court.[16]

Likewise, the broad language of the agreed order appointing Owens the receiver and of the divorce decree more closely resembles the *Ramirez* order than the *Alpert* order.[17] Just as the complaints about Conner concerned his conduct as a receiver, Deborah's complaints about Owens "all fall squarely under the authority delegated to" Owens by the family court.[18] There is no evidence that Owens had a relationship with the Logsdons outside his role as receiver. Finally, the family court's finding that Owens "ha[d] performed his duties as Court Appointed Receiver in regards to the auction of Champion Sweeping" further supports the conclusion that Owens acted as an arm of the family court in selling Champion Sweeping.[19]

---

[16] *Conner*, 2010 WL 4812991, at *3–4 (citations omitted).

[17] *See id.* at *3; *Ramirez v. Burnside & Rishebarger, L.L.C.*, No. 04-04-00160-CV, 2005 WL 1812595, at *2 (Tex. App.—San Antonio Aug. 3, 2005, no pet.) (mem. op.).

[18] *See Conner*, 2010 WL 4812991, at *4.

[19] *See id.*

Owens proved as a matter of law that all of his acts and omissions Deborah complains of occurred in his capacity as a receiver and thus in his service as an arm of the family court. He therefore has absolute judicial immunity from liability.[20] The trial court correctly granted summary judgment on Owens's affirmative defense of derived judicial immunity. We overrule Deborah's first issue.

**Conclusion**

Because our holding on Deborah's first issue is dispositive, we do not reach her remaining issues.[21] Having held that Owens is entitled to absolute judicial immunity, we affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED: June 9, 2016

---

[20] *See id.* at *3; *see also Halsey*, 87 S.W.3d at 554.

[21] *See* Tex. R. App. P. 47.1.

10