**Affirm and Opinion Filed December 4, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-01140-CV**

**ZACHARIAH C. MANNING, Appellant**
**V.**
**GLORIA B. JONES, Appellee**

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-17-15897**

# MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Carlyle
Opinion by Justice Pedersen, III

This case arose from the appointment of a receiver to maintain, and to sell, a marital asset in connection with a divorce proceeding. The husband of the divorcing couple sued the receiver, alleging (i) breach of a management agreement between the husband and the receiver, and (ii) quantum meruit. The receiver filed a motion for summary judgment based on the doctrine of derived judicial immunity, and the district court granted the motion and rendered a take-nothing judgment against the husband. We affirm.

**BACKGROUND**

Zachariah Manning (Manning) and Monica Fletcher (Fletcher) divorced in 2015.[1] Their divorce case was tried in Dallas County District Court. The trial focused, among other issues, on the disposal of a multi-use building located at 110 E. Main St., Grand Prairie, Texas (the Property). The Property was acquired during the couple's marriage through Trans Financial, LLC, a company that Manning started, also during the marriage.

**Jones's Appointment as Receiver**

The district court determined the Property was community property and ordered that it be sold. On June 13, 2015, Manning, on behalf of Trans Financial, hired Berkshire Hathaway Homeservices, a real estate brokerage firm, to sell the Property. Manning refers to Berkshire Hathaway as Penfed Realty, LLC d/b/a Prudential Penfed Realty (Penfed), and we, too, will adopt this nomenclature. Gloria Jones, a real estate agent sponsored by Penfed, signed the listing agreement on its behalf.[2] The agreement required Penfed to list the Property at a gross sales price of $795,000 and to sell the Property at this price or at any other price acceptable to Trans Financial.

Fletcher filed a motion for the appointment of a receiver to take charge and possession of the Property. In connection with this motion, Manning allegedly asked Jones if she were qualified to serve as, and had an interest in serving as, the receiver. He claims that Jones materially misrepresented her qualifications, thereby inducing him and Fletcher to agree that Jones should serve as the receiver. On June 17, the district court signed an order appointing Jones as receiver to take charge and possession of the Property. *See* TEX. FAM. CODE ANN. § 6.502(a)(5) (permitting court, during pendency of suit for dissolution of marriage, to render an appropriate order appointing receiver for preservation and protection of property of parties); *Shultz v. Shultz*, No.

---

[1] Fletcher took the surname Manning during the couple's marriage, but she has since changed her surname to Fletcher.

[2] Jones has known Manning and Fletcher for a long time and was their real estate agent in several transactions during their marriage.

05-18-00876-CV, 2019 WL 2511245, at *2 (Tex. App.—Dallas June 18, 2019, no pet.) (mem. op.) (noting that a trial court's "broad authority" to divide martial property upon dissolution of marriage "sometimes includes the power to enlist the aid of a receiver to effectuate the . . . court's orders and judgments" (citing, inter alia, FAM. CODE § 7.001)). The order states that "Jones is qualified to serve as Receiver." It also vests her with "full power and authority" to (i) manage and maintain the Property; (ii) collect rents; (iii) pay expenses; and (iv) take any other action that, in her judgment, is necessary for carrying out and discharging her duties. In addition, the order notes that "the receiver may designate Mr. Manning as the person responsible for the day to day management of the Property." Finally, the order requires Jones to list the Property as soon as practicable, empowers her to sell the Property, and mandates that she distribute the net sales proceeds "in accordance with the provisions therefor" in the divorce decree.

**Efforts to Maintain, and to Sell, the Property**

Pursuant to the court's order, Jones listed the Property on the multiple listing service (MLS). The parties focus on different aspects of the steps that Jones took, or did not take, to sell the Property. Manning alleges that he, not Jones, handled showings and provided access to the Property. In contrast, Jones avers that she showed the Property to buyers on several occasions but that no one was interested in purchasing it at the price at which it was listed.

Jones and Manning also signed an agreement, pursuant to which Manning would carry out Jones's powers under the June 17 order to manage the Property. Under the terms of the agreement, referred to herein as the Management Agreement, Jones would compensate Manning $1,050 per month from the Property's monthly rents when collected. Manning claims that, in accordance with the Agreement, he managed and maintained the Property, collected rents, paid expenses, loaned the Property money, and took other actions necessary for carrying out the Agreement.

According to Jones, the Property's operating income was insufficient to pay Manning's management fee. She attributes this lack of income to the Property's substandard condition and its limited available parking, which prompted tenants to leave. On May 5, 2016, Jones accepted a $360,000 purchase offer for the Property, and the Property sold on or about July 29 of the same year. Manning submitted his expense receipts and compensation invoices for payment pursuant to the Management Agreement. He alleges that Jones sent an e-mail to him dated July 27, 2016, copying Fletcher's attorney, in which Jones agreed with the compensation and reimbursement sought by Manning under the Agreement. Moreover, in an August 17, 2016 telegram, Jones agreed that Manning should be reimbursed and compensated, but she also stated that there might not be "enough funds to cover all expense[s]" given that "the rental rates declined from December 2015." Thereafter, in response to an objection by Fletcher, Jones purportedly retracted her agreement with respect to the amount that Manning was owed, though she continued to acknowledge that Manning was entitled to compensation. Manning claims that Jones then became distant and refused to return his phone calls or text messages. After closing, Jones deducted a six percent broker's commission and deposited the balance of the sales proceeds into the court's registry. In other words, she deducted her commission but did not pay Manning. Following a hearing at which Jones testified, the district court distributed the proceeds.

**Manning's Lawsuit**

In February 2017, Manning sued (i) Jones; (ii) Penfed; and (iii) an officer of Penfed, Richard Ray Wylie. Manning asserted three causes of action against all defendants,[3] one against Jones,[4] and one against Penfed.[5] These claims sounded in tort and arose from, among other acts or

---

[3] Negligence, gross negligence, and breach of fiduciary duties.

[4] Fraudulent misrepresentation.

[5] Vicarious liability.

omissions, Jones's alleged misrepresentations that she was qualified to serve as receiver, the defendants' sale of the Property for less than its fair market value, and their failure to refrain from engaging in conflicts of interest.

In September 2017, Manning filed a no evidence and traditional motion for partial summary judgment. The motion urged that Wylie and Jones, as a matter of law, breached fiduciary duties owed to Manning. Following a hearing, the court denied the motion on November 10, 2017.

In March of the following year, Manning filed a second amended petition that asserted claims for breach of the Management Agreement and for quantum meruit in lieu of the tort claims that he had previously alleged. Manning's contract and quantum meruit claims are asserted against Jones, in her capacity as receiver, as the sole defendant.

On June 20, 2018, the defendants filed a motion for summary judgment against Manning. They amended their motion the following month, on July 26. Their motion did not specify whether it was a traditional or a no-evidence motion, but it attached evidence and was based on the doctrine of derived judicial immunity, which, as referenced below, is an affirmative defense on which the defendants bore the burden of proof at trial. Accordingly, we will construe the defendants' motion as a traditional motion. *Compare SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015) ("A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." (citing, inter alia, TEX. R. CIV. P. 166a(c)), *with First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) ("To defeat a no-evidence motion, the non-movant must produce evidence raising a genuine issue of material fact as to the challenged elements.").

Each of the defendants named in Manning's original and first amended petitions joined in the summary judgment motion, notwithstanding that Manning's second amended petition had alleged claims only against Jones. For purposes of this appeal, we will consider Jones as the sole

summary-judgment movant. Her motion asserted that she enjoyed "derived judicial immunity" from suit. As support, the motion attached an affidavit by Jones, in which she described the circumstances that led to her appointment as the receiver as well as the actions that she undertook in this capacity with respect to the Property. Manning countered that derived judicial immunity did not apply because Jones did not comply with section 64.051 of the Civil Practice and Remedies Code[6] and that, in this circumstance, Jones's liability for breach of contract is statutory.[7]

On September 20, 2018, the district court granted Jones's summary-judgment motion. The order states that Manning shall "take nothing by this suit and [that] all claims asserted by [Manning] are dismissed with prejudice to re-filing." It also awards Jones her court costs and states that it is a final, appealable judgment. Manning then perfected this appeal pro se.[8]

## ANALYSIS

### Scope of Appeal

As discussed previously, in November 2017, the district court denied Manning's no-evidence and traditional motion for partial summary judgment. This order did not become a final, appealable order until it merged into the court's September 2018 order that granted Jones's summary-judgment motion. *See Webb v. Jorns*, 488 S.W.2d 407, 408–09 (Tex. 1972) (holding that interlocutory order did not become final until it merged into final judgment); *accord Hill v. Hill*, 460 S.W.3d 751, 759 (Tex. App.—Dallas 2015, pet. denied). Manning's appeal brief is unclear as to whether he alleges error only with respect to the court's grant of Jones's motion, or also with respect to its denial of Manning's motion. However, Manning's notice of appeal from the September 2018 order states that he "desires to appeal *all portions* of the order/judgment."

---

[6] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 64.051(a)–(b) (establishing priority of payment by category of claim and stating that "[c]laims listed in this section have a preference lien on the earnings of the property held by the receiver").

[7] *See id.* § 64.052(a) (providing that a receiver who holds property in Texas may be sued in her official capacity in a court of competent jurisdiction without permission of appointing court).

[8] Manning was represented by counsel up to the point that he perfected this appeal.

(Emphasis added). Upon construing Manning's brief liberally, *see Chambers v. State*, 261 S.W.3d 755, 757 (Tex. App.—Dallas 2008, pet. denied), and in light of the language in his notice of appeal, we will interpret Manning's appeal as including a challenge to the denial of his motion for partial summary judgment.

Nevertheless, under the circumstances of this case, Manning's appeal from the denial of his motion must fail. After the district court denied Manning's motion, he amended his petition and alleged claims against Jones for breach of contract and quantum meruit in lieu of the tort claims[9] that he had previously alleged against Penfed, Wylie, and/or Jones. Manning's abandonment of his tort claims renders moot our consideration as to whether the district court erred in denying his motion for partial summary judgment with respect to these claims. *See Crown Asset Mgmt., L.L.C. v. Hernandez*, No. 05-07-01392-CV, 2008 WL 4648418, at *1 (Tex. App.—Dallas Oct. 22, 2008, no pet.) (mem. op.) (noting that superseded original petition was no longer part of pleadings in case). Accordingly, we will consider only whether the district court erred in granting Jones's motion for summary judgment with respect to the breach of contract and quantum meruit claims asserted in Manning's second amended petition, which is his current live petition.

**Waiver**

We turn next to Jones's contention that Manning waived this appeal because he did not appeal the district court's prior order distributing the proceeds from the sale of the Property. Jones cites no supporting authority for this position. *See* TEX. R. APP. P. 38.1(i) (stating that appellant's brief "must contain . . . appropriate citations to authorities"); *id.* R. 38.2 (a)(1) (stating that appellee's brief must conform to the requirements of Rule 38.1). However, we construe her brief as asserting that the underlying suit, which led to this appeal, is an impermissible collateral attack on the prior distribution order in the divorce suit. *See Baxter v. Ruddle*, 794 S.W.2d 761, 762 (Tex.

---

[9] Namely, his claims for vicarious liability, fraudulent misrepresentation, negligence, gross negligence, and breach of fiduciary duties.

1990) ("If an appeal is not timely perfected from the divorce decree, res judicata bars a subsequent collateral attack."); *Lopez v. Lopez*, No. 04-04-00277-CV, 2004 WL 2945697, at *1 (Tex. App.— San Antonio Dec. 22, 2004, no pet.) (mem. op.) ("Because an appeal was not timely perfected, res judicata bars a subsequent collateral attack on the divorce decree, even if the decree improperly divided the property." (citing *Baxter*, 794 S.W.2d at 762–63)).

The record in this appeal does not contain a copy of the distribution order that Jones claims Manning should have appealed. Assuming this order was a final, appealable order, Jones's summary-judgment motion in the underlying suit did not assert that the suit was barred by res judicata by virtue of the prior distribution order. We cannot affirm the district court's summary-judgment order on a ground that Jones did not assert in her motion. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) ("[W]e hold that a summary judgment cannot be affirmed on grounds not expressly set out in the motion or response."). Nor does the appellate record contain a copy of Jones's answer in the underlying suit, and thus we cannot tell whether she alleged res judicata as an affirmative defense. *See* TEX. R. CIV. P. 94 (requiring that res judicata be pleaded as an affirmative defense); *Whallon v. City of Houston*, 462 S.W.3d 146, 155 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ("[R]es judicata is subject to waiver."). Under the circumstances before us, Manning's failure to appeal the district court's prior distribution order is not a basis for affirming the subject order on appeal.

**Derived Judicial Immunity**

With respect to the merits of Manning's appeal, he raises ten issues, many of which contain multiple subparts. The majority of these issues relate to the elements of Manning's claims rather than to Jones's affirmative defense of derived judicial immunity.[10] Jones's defense was the sole

---

[10] *See West v. Robinson*, 486 S.W.3d 669, 673 (Tex. App.—Amarillo 2016, pet. denied) ("Absolute judicial immunity is an affirmative defense."); *Logsdon v. Owens*, No. 02-15-00254-CV, 2016 WL 3197953, at *5 (Tex. App.—Fort Worth June 9, 2016, no pet.) (mem. op.) ("The trial court correctly granted summary judgment on [court-appoint receiver's] affirmative defense of derived judicial immunity."); *B.W.D. v.*

ground in her motion for summary judgment, and thus it is the only basis on which we may affirm the motion, *see Stiles*, 867 S.W.2d at 26. A defendant moving for summary judgment on an affirmative defense must prove conclusively the defense's elements. *See Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001) (stating same in context of limitations defense); *see also* TEX. R. CIV. P. 166a(c) (requiring rendition of summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion"). In reviewing a summary judgment order, we resolve all doubts against the movant, we view the evidence in the light most favorable to the non-movant, and we take as true evidence favorable to the non-movant. *See Shah*, 67 S.W.3d at 842.

*Applicable Law*

"[A]bsolute immunity extends to all judicial acts unless such acts fall clearly outside the judge's subject-matter jurisdiction." *Spencer v. City of Seagoville*, 700 S.W.2d 953, 957–58 (Tex. App.—Dallas 1985, no writ) (citing *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)). In addition, when a judge delegates his or her authority or appoints others to perform services for the court, the judicial immunity that attaches to the judge may follow the delegation or appointment. *B.W.D. v. Turnage*, No. 05-13-01733-CV, 2015 WL 869289, at *3 (Tex. App.—Dallas Mar. 2, 2015, pet. denied) (mem. op.). A person entitled to derived judicial immunity receives the same absolute immunity from liability as a judge acting in his or her official judicial capacity. *Dallas Cty. v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002); *B.W.D.*, 2015 WL 869289, at *3.[11]

"Texas uses a functional approach in determining whether a person is entitled to absolute derived judicial immunity." *B.W.D.*, 2015 WL 869289, at *4. Under this approach, we must

---

*Turnage*, No. 05-13-01733-CV, 2015 WL 869289, at *3–6 (Tex. App.—Dallas Mar. 12, 2015, pet. denied) (mem. op.) (holding that defendants were entitled to summary judgment on their affirmative defense of derived judicial immunity).

[11] Absolute immunity provides immunity from suit, not just from liability. *Charleston v. Allen*, 420 S.W.3d 134, 137 (Tex. App.—Texarkana 2012, no pet.). Although such immunity implicates subject matter jurisdiction, *City of Magnolia 4A Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 299 (Tex. 2017) (per curiam), it may be raised through a motion for summary judgment, *see Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018), as Jones did here.

"determine whether the activities of the person seeking immunity are intimately associated with the judicial process and whether the person exercised discretionary judgment comparable to a judge, as opposed to ministerial or administrative tasks." *Id.* (citing, inter alia, *Halsey*, 87 S.W.3d at 554, 556). In other words, "[i]f an action involves personal deliberation, decision or judgment, it is discretionary; actions requiring obedience to orders or the performance of a duty to which the actor has no choice are ministerial." *Id.* (citing *Halsey*, 87 S.W.3d at 556). Derived judicial immunity has been extended to court officers and appointees, including trustees and receivers, for acts they are required to do under court order or at a judge's direction.[12]

*Manning's Contentions*

Manning contests Jones's derived immunity by focusing on the period prior to June 17, 2015, when the district court appointed Jones receiver. He urges Jones owed him a fiduciary duty in her capacity as a real estate agent[13] and that she is not entitled to derived judicial immunity with respect to breaches of this duty that pre-date the June 17 order. Whether Jones breached a fiduciary duty to Manning is irrelevant to our analysis because, prior to the court's summary-judgment order, Manning abandoned all of his claims except for his claims for breach of contract and quantum meruit. These remaining claims are based on the June 22, 2015 Management Agreement, which was executed five days after the court had appointed Jones as receiver. Under this circumstance, we are not persuaded by Manning's argument.

Manning also urges that he has a "preference lien on the earnings of the property held by [Jones]" to satisfy his claim against Jones for her breach of the Management Agreement. *See* Civ.

---

[12] *See Clements v. Barnes*, 834 S.W.2d 45, 46–47 (Tex.1992) (per curiam) (court-appointed bankruptcy trustees); *B.W.D.*, 2015 WL 869289, at *1, *3–6 (individual and entity appointed by court to conduct court-ordered drug testing in child custody dispute); *Davis v. West*, 317 S.W.3d 301, 307 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (court-appointed receiver); *Rehabworks, LLC v. Flanagan*, No. 03-07-00552-CV, 2009 WL 483207, at *2 (Tex. App.—Austin Feb. 26, 2009, pet. denied) (mem. op.) (court-appointed receiver); *B.K. v. Cox*, 116 S.W.3d 351, 356–58 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (court-appointed psychologists and hospital); *see also Alpert v. Gerstner*, 232 S.W.3d 117, 130–31 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (court-appointed receiver entitled to derived judicial immunity for all acts authorized by court, but not for breach of fiduciary duties).

[13] *See Birnbaum v. Atwell*, 01-14-00556-CV, 2015 WL 4967057, at *10 (Tex. App.—Houston [1st Dist.] Aug. 20, 2015, pet. denied) (mem. op.) ("A real estate broker owes a fiduciary duty while acting on behalf of a client." (citing 22 Tex. Admin. Code § 531.1)).

–10–

PRAC. & REM. § 64.051(a)(5), (b). In addition, he asserts that "[a] receiver who holds property in this state may be sued in [her] official capacity in a court of competent jurisdiction without permission of the appointing court." *Id.* § 64.052(a). Moreover, he notes that "[t]he court that appointed a receiver shall order any judgment against the receiver to be paid from funds held by the receiver." *Id.* § 64.053. None of these provisions preclude derived judicial immunity from applying to a receiver to the extent the requirements of such immunity are established. *See Glasstex, Inc. v. Arch Aluminum and Glass Co.*, No. 13-07-00483-CV, 2016 WL 747893, at *4 (Tex. App.—Corpus Christi–Edinburg, Feb. 25, 2016, no pet.) (mem. op.) ("[W]hile some suits against receivers are permitted, this suit is not."); *Davis v. West*, 317 S.W.3d 301, 308 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("Section 64.052 does not enlarge or restrict the causes of action that may be asserted against a receiver, nor does it abrogate a receiver's derived judicial immunity for acts taken within the scope of his receivership."); *Rehabworks, LLC v. Flanagan*, No. 03-07-00552-CV, 2009 WL 483207, at *4 (Tex. App.—Austin Feb. 26, 2009, pet. denied) (mem. op.) ("[S]ection 64.052 does not permit *all* suits against receivers." (emphasis in original)).

In addition, Manning cites *In re Marriage of Tompkins* as support for his position. No. 06-04-00067-CV, 2005 WL 1593934 (Tex. App.—Texarkana July 8, 2005, no pet.) (mem. op.). In that case, the trial court appointed a receiver to sell the marital residence. *Id.* at *1. The receiver executed an earnest money contract with a purchaser, but the husband's actions in the litigation clouded the title to the residence, thereby delaying the closing of the sale. *Id.* at *3. The purchaser sued the receiver for breach of contract. *Id.* In its order of final accounting, the trial court determined that the husband caused the receiver to breach her contract with the purchaser. *Id.* at *4. The court rendered judgment for the purchaser in the amount of $10,000, plus an additional $2,000 as attorney's fees, and ordered that the judgment should be paid from the funds held by the receiver. *Id.* at *1–2, *4 (citing CIV. PRAC. & REM. § 64.053). Moreover, one half (i.e., $6,000) of

the foregoing award was to be paid from the husband's remaining proceeds in the receivership. *Id.* at *2, *4. The husband appealed this order, and our sister court held that the trial court did not abuse its discretion by deducting the costs of half of the purchaser's judgment from the husband's share of the funds held by the receiver. *Id.* at *2–4. The doctrine of derived judicial immunity was not discussed in *Tompkins*, and thus it has no bearing on the question of whether Jones is entitled to such immunity under the facts of this case.

*Analysis of Summary-Judgment Evidence*

Jones's motion for summary judgment attached a copy of the June 17, 2015 order that appointed her as receiver. This order vested Jones with authority to sell the Property, to manage and maintain it pending a sale, to distribute the net sales proceeds in accordance with the divorce decree, and to take such actions that in her judgment were necessary for carrying out and discharging her duties. As described above, Jones also submitted an affidavit in support of her motion. In this affidavit, Jones describes the actions that she took to fulfill the foregoing responsibilities. Namely, she retained Manning to manage the Property while she tried to sell it. Jones also listed the Property with MLS, she put a sign outside the Property, she "used word of mouth to advertise the Property," and she showed the Property "on several occasions to various buyers." Jones did not pay Manning his management fee given the Property's declining operating income. Moreover, when no one was interested in purchasing the Property at the price listed, Jones made a business judgment to reduce the listing price, which resulted in a sale. These decisions by Jones were discretionary decisions, comparable to a judge, and were within the scope of her authority delegated by the court to sell the Property and to preserve and protect its value pending a sale. *See* FAM. CODE § 6.502(a)(5); *Rehabworks*, 2009 WL 483207, at *3 (concluding that defendant's actions "were all within the scope of his authority as receiver because they all related to receiving and preserving the income and value of [the property] until the court issued further

orders"). Jones's summary-judgment evidence establishes as a matter of law that she is entitled to derived judicial immunity with respect to the foregoing acts. *See* TEX. R. CIV. P. 166a(c); *Shah*, 67 S.W.3d at 842.

Since Jones met her summary-judgment burden, the burden shifted to Manning to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). To meet his burden, Manning offered a copy of the Management Agreement, which specifies that he will be compensated $1,050.00 per month for his services "from the monthly rents when collected." He also offered the August 17, 2016 telegram in which Jones opined that "Manning, owner, acting as Property Manager, should be reimbursed at the rate of $1050.00 from December 2015 through August 2016" and "should be compensated for his out of pocket expense relative to covering both Mortgages . . . [i]nsurance policy, [s]ecurity service, [f]ire alarm, and other related expense." As noted above, the telegram also states that "the rental rate declined from December 2015, thereby not leaving enough funds to cover all expenses." In addition, it discusses the "extensive" time that Manning spent assembling the documentation relevant to the Property."

The foregoing evidence shows that the services performed by, and the expenses incurred by, Manning were eligible for compensation and reimbursement under the Management Agreement, assuming there were monthly rents from the Property available to pay these costs. However, none of this evidence, even when viewed in Manning's favor, suggests that Jones was performing ministerial, as opposed to discretionary, duties or that she was acting beyond the scope of her authority delegated to her by the court's June 17, 2015 order. *See B.W.D.*, 2015 WL 869289, at *3–4. Accordingly, the summary-judgment evidence does not raise a genuine issue of material fact as to whether Jones is entitled to derived judicial immunity. *See* TEX. R. CIV. P. 166a(c); *Shah*,

67 S.W.3d at 842. We conclude that the district court did not err in granting Jones's motion for summary judgment.

## CONCLUSION

We affirm the judgment of the district court.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

181140f.p05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ZACHARIAH C. MANNING, Appellant

No. 05-18-01140-CV     V.

GLORIA B. JONES, Appellee

On Appeal from the 301st Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-17-15897.
Opinion delivered by Justice Pedersen, III.
Justices Reichek and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 4th day of December, 2019.